DORIS E. COHN, Plaintiff-Appellee, v. METROPOLITAN LIFE INSUR-
ANCE COMPANY *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—89—1173

Opinion filed August 1, 1990.—Rehearing denied September 13, 1990.

Bellows & Bellows, of Chicago, for appellants.

Burke, Wilson & McIlvaine, of Chicago, for appellee.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

The plaintiff, Doris E. Cohn, brought a declaratory judgment action seeking to impose a constructive trust on the proceeds of her former husband's life insurance policy. The trial court granted the plaintiff's motion for summary judgment, and the defendants appeal.

Stated briefly, the following facts are relevant to the disposition of this appeal. Doris Cohn (Doris) and Sheldon Cohn (Sheldon) were married from March 12, 1950, until a judgment of divorce was entered on April 29, 1968. The Cohns had two children, Lorry Cohn and Lisa Cohn, who were both minors at the time of the divorce. Incorporated into the divorce decree was a property settlement agreement containing a provision which provided as follows:

> "That the husband shall maintain in full force and effect the following life insurance policies on his life and shall name the two children of the parties hereto, namely LORRY and LISA, and the wife as co-equal irrevocable beneficiaries, the wife to remain on said policies until she remarries or becomes de-

ceased, at which time she shall be removed from said policies and the children shall remain on said policies until such time as they become of legal age or complete their college and professional schooling, whichever occurs last."

Sheldon carried a life insurance policy with the Metropolitan Life Insurance Company (Metropolitan) which at the time of the divorce in 1968 had a value of $40,000. In accordance with the agreement, Doris and the children were named as beneficiaries on the Metropolitan policy. Following the divorce, Doris filed for modification, and in 1978 Doris and Sheldon reached a new agreement which was subsequently incorporated into a settlement order modifying the decree. Pursuant to that settlement order, Doris agreed to receive a lump sum of $4,000 in lieu of Sheldon's maintenance obligations. The order further stated that "Doris E. Cohn, is hereby barred from asserting any claim to maintenance past, present or future."

On December 18, 1987, Sheldon removed Doris as a beneficiary and named Lorry and Lisa Cohn, Shelly Levine, Brad Cohn, and Morton Corey as his beneficiaries (hereafter named beneficiaries). Sheldon died in March of 1988. At the time of his death, Lorry and Lisa Cohn had attained the age of majority and had completed their schooling.

The named beneficiaries and Doris filed claims with Metropolitan for the insurance proceeds, which by then had increased to a value of $197,000. Doris subsequently brought this action against Metropolitan and the named beneficiaries, claiming that she should be the sole recipient of the insurance proceeds. Her action rests upon the well-settled rule that when a marriage settlement agreement requires the former spouse to maintain life insurance for the benefit of a particular beneficiary, that beneficiary has an equitable right to the insurance proceeds against any other named beneficiary, except one with a superior equitable right. (*IDS Life Insurance Co. v. Sellards* (1988), 173 Ill. App. 3d 174, 177, 527 N.E.2d 426; *Appelman v. Appelman* (1980), 87 Ill. App. 3d 749, 753-54, 410 N.E.2d 199.) Metropolitan filed a counterclaim of interpleader and was subsequently dismissed from the case upon depositing the insurance proceeds with the clerk of the court. The named beneficiaries filed affirmative defenses, which, as amended, asserted that the settlement order entered in 1978 bars Doris from claiming any rights to the insurance proceeds, and alternatively, if Doris is entitled to the insurance proceeds, then she is only entitled to $60,000, the amount of the policy in 1978. Doris subsequently filed a motion to strike the amended second affirmative defense and a motion for

summary judgment. The trial court granted both motions, and the named beneficiaries now appeal from only the entry of summary judgment.[1]

■ On appeal, the named beneficiaries argue that: (1) the trial court erred in granting Doris' motion for summary judgment because an issue of fact exists as to whether Doris contracted away her rights to the insurance proceeds in the 1978 settlement order; and (2) if Doris is not barred from claiming rights to the insurance proceeds, she is only entitled to one-third of the proceeds on the theory that the proportionate shares designated for Lorry and Lisa each reverted back to Sheldon once Lorry and Lisa became emancipated. Summary judgment is granted only where the pleadings, and the affidavits and depositions, if any, show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) A motion for summary judgment and its supporting documents must be strictly construed against the moving party and liberally in favor of the opponent. *Rowe v. State Bank* (1988), 125 Ill. 2d 203, 214, 531 N.E.2d 1358.

■ In interpreting the provisions of a divorce decree, where the terms of a property settlement agreement have been incorporated therein, the same rules applicable to the construction of contracts apply. (*McWhite v. Equitable Life Assurance Society of the United States* (1986), 141 Ill. App. 3d 855, 864, 490 N.E.2d 1510; *Brandel v. Brandel* (1966), 69 Ill. App. 2d 264, 267, 216 N.E.2d 21.) The reviewing court seeks to ascertain the intention of the trial court and the parties as expressed in the agreement, and if the agreement is unambiguous, no question of construction arises. (*Brandel*, 69 Ill. App. 2d at 267.) When contract terms are unambiguous, the court looks only to the instrument and no parol or extrinsic evidence may be considered. *Brandel*, 69 Ill. App. 2d at 267.

The named beneficiaries argue that the settlement order is ambiguous and, thus, a question of fact exists that precludes the entry of summary judgment. They assert that the term "maintenance" as

---

[1]The named beneficiaries have apparently conceded that their amended second affirmative defense is without merit. This court addressed the issue in *In re Schwass* (1984), 126 Ill. App. 3d 512, 516-17, 467 N.E.2d 957. In *Schwass*, the court held that where the parties intend for certain individuals to benefit from an insurance policy as opposed to a specific amount of the proceeds, then any increase in the value of the policy belongs to those persons for whose benefit the policy was required to be maintained. See also *Koenings v. First National Bank & Trust Co.* (1986), 145 Ill. App. 3d 14, 17-18, 495 N.E.2d 671.

used in the settlement order refers to the insurance provision contained in the original property agreement because the insurance provision was intended only to serve as security for Sheldon's support obligations. The named beneficiaries reason that since Doris released Sheldon from his support obligations, a reasonable person could infer that she also relinquished her rights to the insurance policy securing those obligations. Doris contends that the insurance was not intended as security and is therefore not included within the meaning of the term "maintenance" as used in the settlement order. We find that the resolution of this question is controlled by *In re Estate of Comiskey* (1984), 125 Ill. App. 3d 30, 34, 465 N.E.2d 653, and conclude that the insurance policy is not included within the meaning of the term "maintenance."

In *Comiskey*, the decedent entered into a property settlement agreement in which he promised to name his two daughters from his second marriage as "irrevocable beneficiaries on [six life insurance] policies during their minority." In violation of the property settlement agreement, the decedent named his third wife as the primary beneficiary on all six policies. At the time of his death, one of his daughters had not yet attained majority. The minor child brought an action against the decedent's estate seeking to recover the insurance proceeds paid to decedent's third wife. The estate argued that the minor child was entitled to only that amount of the insurance proceeds covering the decedent's remaining support obligations because the insurance provision was intended solely as security for the payment of decedent's child support obligations. The court rejected this contention, explaining that the life insurance provision was a separate article without any reference to the support obligations contained in the other articles and did not provide that the proceeds were to be related to or disbursed only to the extent of the support obligations. (*In re Estate of Comiskey*, 125 Ill. App. 3d at 34.) The court further concluded that the insurance provision was unambiguous. *In re Estate of Comiskey*, 125 Ill. App. 3d at 34.

In the present case, as in *In re Estate of Comiskey*, there is no reference in the insurance provision to the obligations it purportedly secures nor is there any indication that the insurance proceeds are to be related to or disbursed only to the extent of those obligations. We therefore conclude that the insurance policy was not intended as security for Sheldon's support obligations. That, in turn, leads us to the conclusion that the term "maintenance" as used in the settlement order does not include the insurance policy. How-

ever, even if the insurance policy was intended as security for Sheldon's support obligations, it does not necessarily follow that the termination of his obligations includes the termination of Doris' rights to the insurance policy. There is no reason why the parties could not have employed the policy as security before the 1978 order and used it as a property provision thereafter.

We therefore find that the 1978 settlement order is unambiguous. The settlement order clearly states that in exchange for $4,000, Doris agreed to terminate Sheldon's maintenance obligations. The order says nothing about the insurance policy. Had the parties intended to terminate Sheldon's obligation to maintain Doris as an irrevocable beneficiary on his life insurance policy, they could have easily expressed that intention in the 1978 settlement order. Accordingly, we hold that the trial court correctly ruled that Doris is not barred by the 1978 settlement order from asserting her rights to the insurance proceeds.

■ The named beneficiaries next contend that the trial court erroneously awarded all of the proceeds to Doris. They assert that because Doris was a co-equal beneficiary with Lorry and Lisa, she is only entitled to a third of the proceeds and that her children's two-thirds reverted back to Sheldon upon their emancipation. We initially note that although this contention was not raised in their answer, the issue is properly before us as this theory was proposed in the appellants' memorandum submitted to the trial court. *Northwest Lincoln-Mercury v. Lincoln-Mercury Division Ford Motor Co.* (1987), 158 Ill. App. 3d 609, 611, 511 N.E.2d 810; *Inland Real Estate Corp. v. Christoph* (1981), 107 Ill. App. 3d 183, 187, 437 N.E.2d 658.

■ The appellants' proposition is supported by *In re Estate of Comiskey* (125 Ill. App. 3d at 36) and this court's decision in *In re Schwass* (1984), 126 Ill. App. 3d 512, 516, 467 N.E.2d 957, both of which relied upon a decision from the State of Washington, *Riser v. Riser* (1972), 7 Wash. App. 647, 501 P.2d 1069. In *Comiskey*, the minor child cross-appealed from the trial court's decision awarding her only half of the proceeds. On appeal, after noting that the decedent treated his minor children equally in the agreement, the court held that half of the proceeds lapsed upon the other daughter's emancipation and reverted back to the decedent, whose named beneficiary was his third wife. (*In re Estate of Comiskey*, 125 Ill. App. 3d at 36-37.) In *Schwass*, the minor children were designated as "co-equal irrevocable beneficiaries" and this court arrived at the same conclusion, holding that one child's share had lapsed upon

emancipation and reverted back to the decedent and that the other child was entitled to half of the proceeds. (*In re Schwass*, 126 Ill. App. 3d at 516.) We continue to follow these decisions and hold that Lorry's and Lisa's shares reverted back to Sheldon and now belong to the named beneficiaries, Lorry and Lisa Cohn, Shelly Levine, Brad Cohn and Morton Corey. Doris is entitled to one-third of the insurance proceeds.

Doris contends, however, that *Comiskey* and *Schwass* are not applicable because her agreement does not limit her to any proportionate share or provide that any lapsed proportions revert to Sheldon. We disagree. The insurance provision in the original agreement designates Doris, Lorry and Lisa as "co-equal irrevocable beneficiaries." That description indicates that they were to each receive a third of the proceeds. Under the agreement, Sheldon was required to maintain Lorry and Lisa as irrevocable beneficiaries until they became emancipated. Sheldon was required to maintain Doris as a beneficiary until she remarried or predeceased him. The agreement clearly contemplated that Sheldon could change his beneficiaries when his obligations terminated. Nothing in the agreement indicates that Lorry and Lisa are to participate in Doris' share should she predecease Sheldon or remarry, or that Doris is to participate in either Lorry's or Lisa's shares upon their emancipation.

Although not directly on point, we find support for this interpretation in *New York Life Insurance v. Rak* (1961), 30 Ill. App. 3d 86, 173 N.E.2d 603. In *Rak*, after reforming an insurance policy to conform with the insurance application, the court held that a surviving sister was only entitled to half of the proceeds and that the estate of the insured was entitled to the other half where the other beneficiary predeceased the insured. In rejecting the contention that a right of survivorship existed, the court stated that "[t]he qualifying word 'equally' has always been regarded as implying a tenancy in common" without a right of survivorship. (*New York Life Insurance Co. v. Rak*, 30 Ill. App. 3d at 93.) Our decision is further supported by *Kruger v. John Hancock Mutual Life Insurance Co.* (1937), 298 Mass. 124, 10 N.E.2d 97, which we find persuasive. In *Kruger*, the decedent acquired a life insurance policy requiring the insurer to pay upon the decedent's death the amount of the policy to her two children "in equal shares to each, if living, or to such other beneficiary as may *** be finally designated *** or if no beneficiary be then living, then to the executor of the said insured." (298 Mass. at 125, 10 N.E.2d at 98.) One of the two children predeceased the insured, and upon the insured's death, the

surviving child argued that she was entitled to all of the proceeds. In holding that the surviving child was entitled to only half of the proceeds, the court stated that the phrase "in equal shares to each" was indicative of "the severance of interests, not of the creation of a joint interest." (*Kruger*, 298 Mass. at 129, 10 N.E.2d at 99-100.) The court continued:

> "The language does not manifest the intent to create an interest in a class, the members of which are to be determined as of the time of the insured's death. The beneficiaries are mentioned by name and a division of the proceeds into halves and the distribution of one half to each beneficiary are directed. [Citation.] The intent is manifest to create a separate interest in each beneficiary individually. There are no words indicating the intent to create any interest through survivorship." (*Kruger*, 129 Mass. at 129, 10 N.E.2d at 100.)

Extending the principle to the case at hand, it is clear from the qualifying term "co-equal" and the context in which it appears that it was not the intention of the parties for Doris to obtain rights to Lorry's and Lisa's shares upon their respective emancipations. Therefore, Doris is not entitled to her children's two-thirds. As to the subsequent reversion, we note that in neither *Comiskey* nor *Schwass* did the courts indicate the existence of, or their reliance upon, a provision in the agreements for reversion of the proceeds. It appears from the cases, and we so hold, that the reversion arises by operation of law.

Doris further argues that *Comiskey* and *Schwass* are distinguishable. She notes that both decisions relied upon *Riser v. Riser.* In *Riser*, the settlement agreement provided that "[t]he husband shall be awarded those policies presently insuring his life." (*Riser*, 7 Wash. App. at 648, 501 P.2d at 1070.) Doris then refers to the following language in the opinion:

> "If, therefore, the insurance provision is interpreted to mean that upon the son attaining his majority or earlier emancipation the son's otherwise existing interest in the insurance policies reverts to the father as owner of the policies, the father's intention to retain his property interest in the policies best carries out that intention." (*Riser*, 7 Wash. App. at 651, 501 P.2d at 1072.)

She therefore concludes that the insured must retain a property interest in the policy before any lapsed proceeds can revert back to the insured. In *Comiskey* and *Schwass*, however, there is no indication that the settlement agreements provided that the insured re-

94

tained any property interests in the policies. We conclude that such expressed retention of a property interest in the policy in this case is not necessary.

We therefore affirm in part and reverse in part the judgment of the circuit court and remand the cause for entry of an order consistent with this opinion.

Affirmed in part and reversed in part.

RIZZI and WHITE, JJ., concur.