*In re* MARRIAGE OF LENARD DRUSS and ELIZABETH DRUSS (Lenard Druss, Petitioner and Counterrespondent, v. Elizabeth Druss, Respondent and Counterpetitioner and Cross-Appellant and Appellee (Lissa Druss, Counterpetitioner and Cross-Appellant and Appellee; Dolores Druss, Counterrespondent and Appellant and Cross-Appellee)).

First District (6th Division)   No. 1—91—1972

Opinion filed March 6, 1992.

RAKOWSKI, J., concurring in part and dissenting in part.

Frank R. Camodeca and Michaels & Michaels, both of Des Plaines (Laura Lynn Michaels, of counsel), for appellants.

Kaufman, Litwin & Gitles and Michael P. Doman, both of Chicago, for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

This action was instituted by Elizabeth Druss, the former wife of Lenard Druss, and by his daughter, Rita Elizabeth Druss (hereinafter Lissa Druss), seeking to enjoin the American Federation of Musicians and Employers' Pension Fund from distributing pension fund payments to Dolores Druss, the second wife and surviving spouse of Lenard. Following an evidentiary hearing, the trial court found that Lissa was entitled to receive 50% of the pension benefits accrued by her father during his lifetime.

Dolores Druss appeals the trial court's determination, contending that the trial court erred in finding that the provision concerning the pension benefits which was included in the marital settlement agreement between Lenard and Elizabeth was ambiguous and required the introduction of extrinsic evidence for its interpretation. Elizabeth and Lissa Druss have filed a cross-appeal, asserting that

the trial court erred in refusing to impose a constructive trust for the pension benefits accrued by Lenard Druss and distributed to Dolores Druss by the American Federation of Musicians and Employers' Pension Fund.

The record indicates that Lenard and Elizabeth Druss were married on May 14, 1967, and had one child, Lissa, born on December 15, 1968. The parties separated on May 26, 1976, and Lenard filed a complaint for divorce on June 7, 1976. At the prove up hearing held on July 25, 1977, Elizabeth testified that she and Lenard had entered into an oral property settlement agreement, and she described many of the terms of that agreement. Specifically, Elizabeth stated that Lenard had agreed to maintain an insurance policy on his life in the amount of $100,000 naming herself and Lissa as beneficiaries. Elizabeth also stated that if she remarried she would no longer be a beneficiary under this policy, and if Lissa completed college, she would not remain as a beneficiary under this policy.

Further, Elizabeth testified she understood that Lenard agreed to leave one-half of his pension benefits to Lissa at the time of his death and that she (Elizabeth) would have a claim against Lenard's estate in that amount. Although Lenard testified at the prove up, he was not questioned about the distribution of his pension fund benefits or about any other specific terms in the marital settlement agreement. At the conclusion of this hearing, the trial judge directed counsel for the parties to prepare a judgment for divorce and stated further that he wanted a transcript of the proceedings.

On August 18, 1977, the trial court entered a judgment for dissolution of the marriage of Elizabeth and Lenard. That judgment provided in relevant part as follows:

> "7. That the parties hereto have entered into an oral agreement providing for the disposition and settlement of their respective rights of property and any and all other rights growing out of the marital relationship existing between them and which either of them now has or may hereafter have or claim to have against the other."

The judgment also included the following provision:

> "12. That the Counter-Defendant [Lenard] shall keep and maintain in full force and effect, by paying the premiums thereon as the same shall fall due and by doing any and all other acts and things necessary or expedient to that end and that he will, within ten (10) days from the entry of this Judgment for Divorce, execute and deliver to the respective insurers, the usual and customary documents used by them to des-

ignate the Counter-Plaintiff [Elizabeth] and the minor child of the parties hereto [Lissa] as equal irrevocable beneficiaries of a $100,000.00 life insurance policy. The Counter-Defendant [Lenard] agrees that he will not borrow against or encumber the said policy.

In the event of the remarriage of the Counter-Plaintiff [Elizabeth] the child shall be named as sole beneficiary and in addition thereto, the Counter-Defendant [Lenard] agrees that upon his death the minor child of the parties [Lissa] shall be entitled to receive 50% of any Profit Sharing, Pension or Death Benefits from the Musicians Union and that he will so provide in his Will and that the child's right to the said monies shall constitute a claim against the estate of the Counter-Defendant [Lenard] which may not be diminished by way of any *inter vivos* transfer."

In addition to these provisions, the judgment for divorce included terms which required Lenard to pay alimony and child support in the unallocated amount of $1,200 per month and which required Lenard to pay the college education expenses for Lissa.

The judgment was signed by the trial judge, Lenard, and counsel for Elizabeth and was approved as to form by counsel for Lenard.

In September 1977, Lenard married his second wife, Dolores. Approximately 5½ years later, on March 16, 1983, the trial court entered a judgment for legal separation between Dolores and Lenard. Dolores and Lenard remained legally separated from March 16, 1983, until Lenard's death on April 17, 1990. During his lifetime, Lenard was a professional musician and accrued approximately $30,000 in benefits in the American Federation of Musicians and Employers' Pension Fund. At the time of her father's death, Lissa was 21 years old.

On June 1, 1990, Elizabeth and Lissa filed their emergency petition for temporary restraining order and preliminary injunction, seeking to restrain the pension fund from distributing to Dolores, Lenard's surviving spouse, any of the benefits accrued by Lenard. At the hearing on this petition, Elizabeth and Lissa argued that Lissa was entitled to 50% of Lenard's pension benefits upon Lenard's death, despite the fact that Elizabeth had not remarried after her divorce from Lenard.

Dolores opposed the petition brought by Elizabeth and Lissa, asserting that as Lenard's surviving spouse she was entitled to the pension benefits accrued by him during his lifetime. Dolores argued

that under the terms of the August 18, 1977, judgment for divorce, Lissa was entitled to receive 50% of Lenard's pension benefits only if Elizabeth remarried prior to Lenard's death.

After hearing argument by both parties, the trial court found that there was a conflict between the testimony taken at the July 25, 1977, prove up proceedings and the written judgment for divorce entered on August 18, 1977. The judge stated further that provision 12 of the judgment was subject to more than one meaning and that it was illogical and did not make sense that Elizabeth's remarriage was a precondition to Lissa's entitlement to 50% of Lenard's pension benefits. Accordingly, the trial court concluded that extrinsic evidence was required for the interpretation of provision 12 and ordered an evidentiary hearing to determine the intent of the parties to the marital settlement agreement.

The trial court considered the transcript of the prove up proceedings and heard testimony from Jules Lehr, the attorney for Lenard at the time the judgment for divorce was entered. The court found that Mr. Lehr's testimony was confused and inconsistent as to the events surrounding the marital settlement agreement. The court found further that some of the other terms contained in the final judgment for divorce were in conflict with the statements made by the parties to the court during the prove up proceedings. The court concluded that the pension provision in the judgment for divorce was not calculated to be security for child support, and consequently, Lissa's interest in the pension fund vested at the time of her father's death regardless of her age.

The trial court specifically acknowledged that the precise meaning of each word in provision 12 supported the position of Dolores and Lissa would have no interest in the pension fund. The court determined, however, that although the provision was "seemingly unequivocal," it was "totally irrational and illogical in application," requiring the introduction of extrinsic evidence. Upon consideration of the transcript of the prove up proceedings and the testimony of Mr. Lehr, the trial court held that Lissa's interest in the pension benefits vested on the death of her father, independent of her mother's marital status.

The trial court subsequently dismissed the petition of Elizabeth and Lissa to impose a constructive trust for the pension benefits previously paid to Dolores Druss. This petition was predicated upon the claim that prior to his death, Lenard had failed to fulfill his obligations under the judgment for divorce which required him to pay alimony and child support in the unallocated amount of $1,200 per

month, to pay the expenses of Lissa's college education, and to maintain a life insurance policy for the benefit of Elizabeth and Lissa.

The trial court determined that any claim for relief based upon Lenard's failure to fulfill these obligations would properly be brought against Lenard's estate but would not serve as a basis for imposition of a constructive trust on the pension benefits paid to Dolores which were not an asset of the decedent's estate. Accordingly, the trial court dismissed the petition to impose a constructive trust because the claim had not been brought against Lenard's estate.

We initially consider the assertion by Dolores that the trial court erred in finding that provision 12 of the judgment for divorce was ambiguous and required the introduction of extrinsic evidence for its interpretation.

The provisions of marital settlement agreements and of dissolution judgments which incorporate such agreements are interpreted under the same rules governing the construction of contracts. (*Cohn v. Metropolitan Life Insurance Co.* (1990), 202 Ill. App. 3d 86, 89, 559 N.E.2d 790; *In re Marriage of Mateja* (1989), 183 Ill. App. 3d 759, 761, 540 N.E.2d 406; *In re Marriage of Holderrieth* (1989), 181 Ill. App. 3d 199, 202, 536 N.E.2d 946.) A court is required to construe the provisions within dissolution judgments and settlement agreements so as to give effect to the intention of the parties, and where the terms are unambiguous, the parties' intent must be determined solely from the language of the instrument itself. (*Cohn*, 202 Ill. App. 3d at 89; *In re Marriage of Mateja*, 183 Ill. App. 3d at 762; *In re Marriage of Holderrieth*, 181 Ill. App. 3d at 202.) The parties' intent must be determined from the instrument as a whole, and it is presumed that the parties inserted each provision deliberately and for a purpose. (*In re Marriage of Holderrieth*, 181 Ill. App. 3d at 202.) The terms and provisions of the instrument may not be construed in a manner which is contrary to or different from the plain and obvious meaning of the language used. (*In re Marriage of Holderrieth*, 181 Ill. App. 3d at 202.) In addition, it is beyond the province of the court to evaluate the wisdom of the contract terms agreed to by the parties. *Gaffney v. William J. Burns Detective Agency International, Inc.* (1973), 12 Ill. App. 3d 476, 482, 299 N.E.2d 540.

Where there is no ambiguity in the terms used by the parties, no parol or extrinsic evidence may be considered. (*Cohn*, 202 Ill. App. 3d at 89; *In re Marriage of Holderrieth*, 181 Ill. App. 3d at

202.) Extrinsic evidence may be introduced only where an instrument is incomplete or where the language used is ambiguous. (*In re Marriage of Holderrieth*, 181 Ill. App. 3d at 202.) Ambiguity exists where the language is reasonably susceptible to more than one meaning. Yet, language may not be characterized as ambiguous merely because the parties do not agree on its meaning. *In re Marriage of Holderrieth*, 181 Ill. App. 3d at 202.

In the instant case, the trial court specifically noted that the language of provision 12 was "seemingly unequivocal" and that the precise meaning of each word in the provision supported the position of Dolores that Lissa had no interest in the pension fund. Yet, the court concluded that the language of provision 12 was susceptible to more than one meaning and was "totally irrational and illogical," requiring the introduction of extrinsic evidence.

The first sentence of the second paragraph of provision 12 stated that "[i]n the event of the remarriage of [Elizabeth] the child [Lissa] shall be named as sole beneficiary and in addition thereto, [Lenard] agrees that upon his death [Lissa] shall be entitled to receive 50% of any Profit Sharing, Pension or Death Benefits from the Musicians Union and that [Lenard] will so provide in his Will and that [Lissa's] right to the said monies shall constitute a claim against the estate of [Lenard] which may not be diminished by way of any *inter vivos* transfer."

Thus, the disposition of the pension benefits was included as a portion of the same sentence which expanded Lissa's entitlement to the life insurance proceeds and followed the conditioning phrase "[i]n the event of the remarriage of [Elizabeth]." Construing this provision according to the principles set forth above, we find that the plain meaning of this language was unambiguous and dictated that the remarriage of Elizabeth was a precondition to Lissa's entitlement to 50% of the pension benefits accrued by her father during his lifetime.

Because this language was unequivocal and unambiguous, we hold that the trial court erred in considering extrinsic evidence to determine the intent of the parties and in finding that Lissa was entitled to 50% of the pension fund.

We note that Elizabeth and Lissa argue in their brief that even if the language in the judgment for divorce was not ambiguous, the trial court could look to the transcript of the prove up proceedings on July 25, 1977. Yet, no cases are cited in support of this assertion. Indeed, it has consistently been held that where there is no ambiguity in the terms used by the parties, no parol or extrinsic ev-

idence may be considered. (*Cohn*, 202 Ill. App. 3d at 89; *In re Marriage of Holderrieth*, 181 Ill. App. 3d at 202.) Consequently, the trial court erred in considering the testimony presented at the prove up proceedings.

Elizabeth and Lissa rely upon *Chastain v. Chastain* (1986), 149 Ill. App. 3d 579, 500 N.E.2d 998, and upon *Neumann v. Neumann* (1978), 58 Ill. App. 3d 211, 373 N.E.2d 57, for the proposition that a prior property settlement agreement should control over a divorce decree where there was a variance between the two. We find, however, that these cases are factually distinguishable from the case at bar.

In *Chastain*, the petitioner sought to correct a provision for child support contained in the judgment order entered by the trial court. At the hearing on the settlement agreement, counsel for respondent advised the court that respondent was to make support payments of $230.51 twice each month until the youngest child reached the age of 18. The trial court subsequently signed a judgment order prepared by counsel for the respondent which provided that respondent was to pay "child support in the sum of $460.00 per month or $230.00 per month per child *** said payments *** continuing on the same day of each month thereafter until the last child attains the age of 18 years." (Emphasis omitted.) *Chastain*, 149 Ill. App. 3d at 580.

The court noted in *Chastain* that the child support provision in the divorce decree was internally inconsistent because it contained contradictory terms and found that the ambiguity in this provision was patent. Counsel for respondent conceded that the order was ambiguous. Accordingly, the court held that the judgment order should be corrected to conform to the terms of the oral settlement agreement reached by the parties and presented in open court. *Chastain*, 149 Ill. App. 3d at 582-83.

In *Neumann*, the petitioner sought post-judgment relief requiring the respondent to comply with the terms of the divorce decree. The divorce decree which had been prepared by counsel for petitioner provided that respondent was required to maintain medical insurance for his children and for petitioner. The written property settlement agreement which was prepared by counsel for respondent and was attached to the decree required respondent to provide medical insurance only for his children. After the decree was entered, respondent cancelled his medical coverage for petitioner, and she subsequently purchased her own medical insurance.

The *Neumann* court determined that the terms of the property settlement controlled and denied the relief sought by petitioner. The court found that the variance between the decree and the property settlement was the result of a mistake caused by the fact that the documents had been prepared by different parties, with no apparent realization that there was an incongruity between the two. The court concluded that the property settlement agreement correctly stated the parties' understanding concerning medical insurance coverage and that when the trial court entered the decree it inadvertently imposed a condition changing the obligations set forth in the property settlement agreement. *Neumann*, 58 Ill. App. 3d at 213.

The case at bar does not involve a provision which is internally inconsistent, and Elizabeth and Lissa have not asserted that the judgment was entered through mistake. Consequently, we find that *Chastain* and *Neumann* are not controlling here.

■ Dolores has also asserted that Lissa had no right to the pension benefits because she had reached the age of majority prior to her father's death and under the language of provision 12, she was entitled to those benefits only if she was still a minor when her father died. Yet, this argument was not presented before the trial court.

The record reveals that counsel for Dolores made the following comment to the trial judge:

"If we're talking about need to support the children, the child is no longer a minor. She's still entitled to the pension, when the purpose was for need to support?"

Dolores' attorney did not, however, argue that Lissa's status as a minor was a precondition to her entitlement to the pension benefits. The trial court specifically found that provision 12 was not calculated to be security for child support and that Lissa had a right to the pension fund regardless of her age at the time of her father's death. Dolores did not challenge this finding in her motion for reconsideration. Because Dolores failed to raise this argument before the trial court, she has waived it for purposes of this appeal.

■ We next address the cross-appeal brought by Elizabeth and Lissa in which they contend that the trial court erred in dismissing their petition to impose a constructive trust for the pension benefits distributed to Dolores by the American Federation of Musicians and Employers' Pension Fund. This petition was predicated upon the claim that prior to his death, Lenard had failed to fulfill his obligations under the judgment for divorce which required him to pay alimony and child support in the unallocated amount of $1,200 per

month, to pay the expenses of Lissa's college education, and to maintain a life insurance policy for the benefit of Elizabeth and Lissa. Elizabeth and Lissa argue that a constructive trust should have been imposed because Dolores would be unjustly enriched if permitted to retain any of the pension fund benefits previously distributed to her. We find this argument to be without merit.

In support of their claim, Elizabeth and Lissa rely on several cases which hold that a constructive trust may be imposed where there is (1) a promise to the first spouse; (2) a transfer in reliance on that promise; (3) a fiduciary relationship between the decedent and the first spouse; and (4) unjust enrichment to the second spouse. See *In re Schwass* (1984), 126 Ill. App. 3d 512, 514-15, 467 N.E.2d 957; *Appelman v. Appelman* (1980), 87 Ill. App. 3d 749, 754, 410 N.E.2d 199; *Brunnenmeyer v. Massachusetts Mutual Life Insurance Co.* (1978), 66 Ill. App. 3d 315, 318-19, 384 N.E.2d 446.

These cases were, however, decided under facts which were markedly different from those presented in the case at bar, and they are not controlling here. The cases cited by Elizabeth and Lissa involved disputes over entitlement to certain specific and particular funds. Yet, as the trial court noted in the instant case, Elizabeth and Lissa have sought imposition of a constructive trust in an attempt to recover for a general claim against Lenard based upon his failure to honor certain support and maintenance obligations set forth in the judgment for divorce. The trial court correctly observed that the amount of Lenard's alleged indebtedness had not been ascertained and found that this claim could only be brought against Lenard's estate or his legal representative. (See *Precision Components, Inc. v. Estate of Kuntz* (1983), 112 Ill. App. 3d 309, 310, 445 N.E.2d 449.) Despite the fact that Dolores had been made an additional party to the action, she was not Lenard's legal representative. Elizabeth and Lissa could not assert against her their claim against Lenard which was based upon his failure to comply with the provisions of the judgment for divorce.

Moreover, as the trial court observed, Dolores' status as surviving spouse gave her a vested right in the pension benefits accrued by Lenard during his lifetime. Lenard's pension plan was a qualified ERISA plan, and the plan administrators were required to distribute monthly survivor benefits to Dolores pursuant to the automatic provisions of the Retirement Equity Act (29 U.S.C. §1055(a) (1974)). Although Elizabeth and Lissa, as general creditors of Lenard, could have garnished monthly pension proceeds that may have been distributed to Lenard during his lifetime, they were not entitled to the

survivor benefits which were paid to Dolores as required by Federal statute.

Consequently, the trial court properly dismissed the petition brought by Elizabeth and Lissa seeking imposition of a constructive trust.

For the foregoing reasons, the trial court's judgment that provision 12 was ambiguous and that Lissa was entitled to 50% of the pension benefits is reversed, and the dismissal of the petition to impose a constructive trust is affirmed.

Affirmed in part; reversed in part.

McNAMARA, J., concurs.

JUSTICE RAKOWSKI, concurring in part and dissenting in part:

While I concur with the majority that the trial court did not err in dismissing Elizabeth and Lissa's petition for a constructive trust, I respectfully dissent from its holding that the first sentence of the second paragraph of provision 12 is unambiguous. For ease of review, the pertinent part of provision 12 reads as follows:

> "In the event of the remarriage of [Elizabeth] the child [Lissa] shall be named as sole beneficiary and in addition thereto, [Lenard] agrees that upon his death [Lissa] shall be entitled to receive 50% of any Profit sharing, Pension or Death Benefits ***." (Hereinafter benefits.)

The critical issue is whether Lissa's entitlement to benefits is conditional upon Elizabeth's remarriage (the majority view) or not. I, like the trial court, believe a reasonable interpretation of provision 12 is that Elizabeth's remarriage is only a condition to Lissa's being named sole beneficiary and that the death of Lenard is the only condition to Lissa's right to the benefits.

The only support the majority gives for its position is that Lissa's entitlement to benefits is part of the same sentence and follows the conditioning phrase (Elizabeth's remarriage). Implicit in the majority position is the concept that when a conditioning phrase is followed by two separate subjects the phrase conditions both subjects. Further support for this position is the idea that had it been intended that Elizabeth's remarriage was a condition only to Lissa's being named sole beneficiary, and not a condition to her entitlement to benefits, the two concepts would have been set forth in separate sentences.

Although I agree that the majority's interpretation is a reasonable one, I do not believe that it is the only reasonable interpretation. It is true that for my interpretation to be crystal clear it becomes necessary to add a period (to make the two provisions separate). On the other hand, for the majority's position to be crystal clear, it would be necessary to replace the phrase "in addition thereto" with words such as "in that event."

As the majority points out, where language is reasonably susceptible to more than one meaning, it is ambiguous (see *In re Marriage of Holderrieth* (1989), 181 Ill. App. 3d 199, 202, 536 N.E.2d 956) and thus parol evidence to establish the actual intent of the parties may be entertained. I am aware of no authority to the effect that this is not the result even if, *arguendo*, it could be said that the majority's interpretation is somewhat more reasonable. In the case *sub judice*, I believe the language at issue may reasonably be interpreted to mean that while Elizabeth's remarriage is a condition of Lissa's being named a sole beneficiary, Lissa's entitlement to benefits is not conditioned upon remarriage, but rather is to be provided for in any event.

For all of the foregoing reasons, I believe that the trial judge was correct in finding provision 12 ambiguous, in allowing the introduction of extrinsic evidence, and in his determination of the parties' intent. Accordingly, I would affirm the judgment of the trial court.