ESTATE OF MYRTIE RECTOR, Plaintiff-Appellant, v. VIRGIL L. WILLIAMS *et al.*, Defendants-Appellees.

First District (6th Division)   Nos. 1—91—1175, 1—91—2246 cons.

Opinion filed April 29, 1994.

Ashman & Associates, of Chicago, for appellant.

Virgil L. Williams, appellee *pro se.*

Marcia Gevers & Associates, of Flossmoor, for appellee Linda C. Williams.

JUSTICE GIANNIS delivered the opinion of the court:
In 1984 Myrtie Rector, plaintiff's decedent, filed a two-count com-

plaint in the circuit court of Cook County. The complaint sought recovery of damages from defendants Virgil and Linda Williams for the alleged breach of a written settlement agreement and for fraud in the inducement of an earlier agreement. Linda Williams failed to appear and a default judgment was entered against her. A jury subsequently found in favor of defendant Virgil Williams on both counts of plaintiff's complaint and the court entered judgment. Linda Williams subsequently appeared and had the judgment against her set aside. Linda Williams proceeded to jury trial on plaintiff's complaint. During the course of the trial, however, the court directed a verdict in her favor. Plaintiff now appeals.

BACKGROUND

On July 12, 1978, Myrtie Rector filed a suit in the superior court of the State of California. In the suit, Rector claimed that her nephew, defendant Virgil Williams, and his wife, defendant Linda Williams, defrauded her of two pieces of property located in San Francisco. The parties have referred to the properties as the Divisidero Street and Broderick Street properties. Specifically, Rector alleged that defendants induced her to deed the properties to them by making materially false and fraudulent representations. She also alleged that the Divisidero property had been sold by the defendants and that they had retained the proceeds of the sale. She also alleged that the Broderick property had been used to secure a loan from the National Bank of Joliet and that the majority of this debt remained outstanding.

The parties settled the California suit. On August 6, 1979, defendants and Rector signed a document entitled "General Release of All Claims." The terms of the settlement were detailed in a subsequent "Settlement Agreement" signed in connection with the release. This document, also signed by the National Bank of Joliet, stated that the Divisidero and Broderick properties had been held in trust for Rector by the defendants. The agreement provided that the defendants would deliver a note to Rector in the amount of $35,711.42 (the amount of the proceeds from the sale of the Divisidero property). The defendants also agreed to execute a deed conveying the Broderick property back to Rector and that Rector would then sell the property. Defendants agreed that they would then deliver a note to Rector in an amount equal to the amount paid to the bank to release the Broderick mortgage. Although the settlement agreement states that it was executed on October 17, 1979, it also indicates that it was signed simultaneously with the general release of all claims, which is dated August 6, 1979. The parties dispute when the 1979 settlement agreement was actually executed.

On October 17, 1979, before the Broderick property had been sold, defendants filed a joint petition in the United States Bankruptcy Court. In the petition, defendants listed various debts totalling over $600,000. Defendants specifically scheduled the Divisidero debt to Rector ($35,711.42), but omitted scheduling their obligations regarding the Broderick property.

On December 19, 1979, Rector filed two adversary complaints in the bankruptcy court objecting to the discharge of the $35,711.42 note and alleging fraud with regard to the settlement agreement. In adversary complaint No. 79 A 0094, Rector stated that she was the former owner of both the Broderick and Divisidero properties; that in May of 1977 Rector signed grant deeds giving up certain rights to both properties; that these deeds were fraudulently induced; that defendants had indebted Rector's property in the amount of $145,000; that the property was currently subject to at least $118,000 worth of indebtedness; that if the grant deeds were left outstanding Rector would suffer damages in the amount of $300,000; that Rector had filed suit in California to recover the deeds; that this suit was settled in consideration for the release of liens placed upon the Broderick property and for a promissory note in the amount of $35,711.42; that defendants had not removed the liens as promised; and that defendants had delivered the promissory note knowing in advance that the debt would be discharged in bankruptcy.

In her prayer for relief in adversary complaint No. 79 A 0094, Rector asked the bankruptcy court to "determine the respective rights of the parties in and to the properties at 1730 Broderick Street and 1051-53 Divisadero [sic] Street." She also asked that the court "restore, to the greatest extent possible, the Plaintiff to her position, relating to the aforesaid properties." In the alternative, the adversary complaint sought $300,000 as compensatory damages and $300,000 as punitive damages.

On May 15, 1980, the parties entered into a second settlement agreement. As part of this settlement, defendants executed and delivered an installment note in the principal amount of $36,900 bearing interest at 9%. On August 5, 1980, an agreed settlement order was entered in the United States Bankruptcy Court. The second settlement agreement is incorporated by reference in this order and the order dismisses adversary complaint 79 A 0094 "with prejudice."

On June 18, 1981, the Broderick property was sold.

In 1984, Rector filed suit, the subject of this appeal, in the circuit court of Cook County. In count I of her complaint, Rector alleged that defendants were obligated under the 1979 settlement agreement to execute a note on June 18, 1981, the date of sale for the Broderick

property, in the amount of $109,931.81. In count II, Rector alleged that representations made in the 1979 settlement agreement were false and fraudulently made. Rector sought $109,931.81 in compensatory damages for defendants' failure to execute the note required by the 1979 settlement agreement as well as $250,000 in punitive damages.

Defendants thereafter filed a motion for involuntary dismissal under section 2—619 of the Code of Civil Procedure (see 735 ILCS 5/2—619 (West 1992)). In the motion, defendants claimed that Rector's claims were settled by the 1980 settlement agreement and by the 1979 "General Release of All Claims." They also argued that any obligation they had to deliver a note to Rector was discharged by the bankruptcy court in 1982. The trial court denied the motion.

Defendants divorced in 1988. In April of 1989, defendants' lawyer withdrew from the case. New counsel for defendant Virgil Williams subsequently filed an appearance, but no one filed an appearance for defendant Linda Williams.

On May 2, 1990, counsel for defendant Virgil Williams appeared before the United States Bankruptcy Court seeking to restrain Rector from pursuing her cause of action in State court. Counsel argued that the obligations raised by Rector had been discharged by the bankruptcy court in 1982 and that the 1980 settlement agreement precluded plaintiff from pursuing her cause of action. At hearing the bankruptcy judge denied the motion.

A jury trial was held in the circuit court in early October 1990, after a conservator had been appointed for Rector. Because defendant Linda Williams failed to appear at trial, a default judgment was entered against her and defendant Virgil Williams proceeded alone.

A jury returned a verdict in favor of defendant Virgil Williams and against plaintiff. On October 9, 1990, a second jury set default damages in favor of plaintiff and against Linda Williams in the amount of $532,000.

Defendant Linda Williams subsequently filed a motion to vacate the judgment against her. (See 735 ILCS 5/1301(e)(West 1992).) The trial court granted this motion on March 20, 1991, and plaintiff went to trial against Linda Williams in June of that year.

During the course of Linda Williams' trial and during the plaintiff's case in chief, the trial judge reviewed the bankruptcy documents, including the 1980 settlement agreement. Based upon the language of the settlement agreement, he concluded that the parties had settled the pending dispute as a matter of law and entered judgment in favor of defendant Linda Williams.

Plaintiff's appeals with regard to both Virgil Williams and Linda Williams have been consolidated for purposes of our review.

## ANALYSIS

Plaintiff first argues one of the two trial courts below necessarily committed error. In the trial of Virgil Williams, the trial court allowed the jury to determine the intent of the parties in signing the 1980 settlement agreement as a matter of fact. In the trial of Linda Williams, a second trial court itself determined the intent of the parties from the language of the 1980 settlement agreement as a matter of law. Plaintiff complains that these decisions are inconsistent. We agree.

■ The provisions of settlement agreements are interpreted under the same rules which govern the construction of all contracts. (*In re Marriage of Lehr* (1991), 217 Ill. App. 3d 929, 934, 578 N.E.2d 19.) A court is required to construe the provisions within settlement agreements so as to give effect to the intention of the parties, and where the terms are unambiguous, the parties' intent must be determined solely from the language of the instrument itself. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 323, 472 N.E.2d 791; *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886; *American States Insurance Co. v. A.J. Maggio Co.* (1992), 229 Ill. App. 3d 422, 426-27, 593 N.E.2d 1083.) The terms and provisions of the agreement may not be construed in a manner which is contrary to the plain and obvious meaning of the language used. (*In re Marriage of Druss* (1992), 226 Ill. App. 3d 470, 475, 589 N.E.2d 874.) It is beyond the province of the court to evaluate the wisdom of the terms of the agreement. *Druss*, 226 Ill. App. 3d at 475.

Where there is no ambiguity in the terms used by the parties, no parol or extrinsic evidence may be considered. (*Cohn v. Metropolitan Life Insurance Co.* (1990), 202 Ill. App. 3d 86, 89, 559 N.E.2d 790.) Such evidence may be considered only where an instrument is incomplete or where the language used is ambiguous. (*Druss*, 226 Ill. App. 3d at 475.) Ambiguity exists where the language is reasonably susceptible to more than one meaning. (*Druss*, 226 Ill. App. 3d at 475.) Language may not be characterized as ambiguous merely because the parties disagree as to its meaning. *Druss*, 226 Ill. App. 3d at 475; *People ex rel. Burris v. Memorial Consultants, Inc.* (1992), 224 Ill. App. 3d 653, 656, 587 N.E.2d 34.

■ After review of the 1980 settlement agreement, we conclude plaintiff's decedent clearly and unambiguously settled the present dispute with regard to both defendants as a matter of law. The language of the 1980 settlement agreement incorporates by reference the two adversary proceedings which were before the United States Bankruptcy Court and details the course of defendants' alleged fraud with regard to *both* the Divisidero and Broderick properties. The

1980 settlement agreement specifically provides that, with regard to the adversary complaints, "[t]he parties are desirous of settling and resolving *all* pending matters and disputes therein." (Emphasis added.) The agreement states that in consideration of Rector voluntarily dismissing with prejudice each complaint, Virgil and Linda Williams would deliver a note to Rector in a principal amount of $36,900. The parties agree that this note was ultimately paid off.

Plaintiff does not argue that the language of the 1980 settlement agreement is ambiguous. Instead, plaintiff points to the fact that the parties settled for the same amount as the deficiency of the Divisidero property plus accrued interest. Plaintiff argues that it is unreasonable to conclude that Rector would insist upon receiving full payment for defendant's actions with regard to the Divisidero property, then completely forgive the much larger debt owed in connection with defendants' encumbrance of the Broderick property. Plaintiff also argues that because the Broderick property had not been sold when the 1980 settlement agreement was signed, the amount of the Broderick debt was unfixed. Plaintiff claims that this indicates that the parties did not intend to settle their dispute regarding the Broderick debt.

Plaintiff's arguments, which rely squarely upon extrinsic evidence, are not persuasive in light of the unambiguous language of the 1980 settlement agreement. Nonetheless, even were we to consider plaintiff's claims we would be unpersuaded. Plaintiff's position fails to take into account the fact that defendants had filed bankruptcy in the fall of 1980 and that plaintiff was under the real threat of receiving nothing for either debt. While plaintiff is correct that the bankruptcy schedules failed to list the Broderick debt and that the amount of the Broderick debt was unknown when the settlement agreement was signed, the parties clearly knew of its existence. Virgil Williams testified at trial that he believed the parties had settled the Broderick debt and Joseph Ozan, Rector's conservator, testified that he knew the adversary complaints contained allegations regarding the Broderick property. Ozan testified that he knew the 1980 settlement agreement settled the adversary complaints.

A verdict must be directed where the evidence, viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. (*Condon v. American Telephone & Telegraph Co.* (1990), 136 Ill. 2d 95, 100, 554 N.E.2d 206; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) It is axiomatic that where the evidence presents only a single possible verdict, the entry of a directed verdict is proper. Because defendant

Linda Williams is entitled to rely upon the plain language of the 1980 settlement agreement, and because the plain language of that agreement prevents the plaintiff from introducing any evidence contrary to its terms, the trial court's decision to direct the verdict in Linda Williams' favor was proper and is affirmed.

Having concluded that the entry of a directed verdict in Linda Williams' trial was proper as a matter of law, the issues raised by plaintiff in Virgil Williams' trial are moot and may be disposed of summarily. (*Condon*, 136 Ill. 2d at 100.) Trial court judgments may be affirmed for any reason, and the appellate court may sustain a judgment upon any ground warranted. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.) Because the parties agree that defendant Virgil Williams has lived up to the terms of the 1980 settlement agreement, he is entitled to the same benefits of settlement enjoyed by his ex-wife. The jury returned a verdict in Virgil Williams' favor. Any errors which may have occurred during the course of his trial were necessarily harmless.

For the foregoing reason, the trial court judgments in favor of Linda and Virgil Williams are affirmed.

Affirmed.

McNAMARA and RAKOWSKI, JJ., concur.