2024 IL App (1st) 230941-U

FOURTH DIVISION
Order filed: February 22, 2024

No. 1-23-0941

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| IN RE THE MARRIGE OF | ) Appeal from the |
| | ) Circuit Court of |
| LORI K. PLIER, | ) Cook County |
| | ) |
| Petitioner-Appellant, | ) |
| | ) No. 2020 D 6769 |
| and | ) |
| | ) |
| DAVID G. PLIER, | ) Honorable |
| | ) Pamela E. Loza, |
| Respondent-Appellee | ) Judge, Presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Martin and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirmed the circuit court's order granting the respondent's motion to enforce the parties dissolution judgement and entering an amended QRDO, finding that the parties' marital settlement agreement was unambiguous on the issue of the division of the respondent's 401(k) plan.

¶ 2    The petitioner, Lori K. Plier (Lori), appeals from an order of the circuit court granting the motion of the respondent, David G. Plier (David), to enforce their Judgement for Dissolution of

Marriage and amend the qualified domestic relations order (QDRO) entered pursuant to that order. For the reasons which follow, we affirm.

¶ 3     The facts relevant to our disposition of this appeal are not in dispute.  The parties were married on May 29, 1999.  Irreconcilable differences arose between them, resulting in a breakdown of their marriage.  As a consequence, Lori filed a petition for dissolution of the marriage in the circuit court of Cook County.

¶ 4     On May 1, 2022, while the dissolution action was pending, the parties entered into a written Marital Settlement Agreement (MSA), purporting to settle between them, among other things, the division of property.  Relevant to the issues in this case, are the following provisions of Article XIII, paragraph 8.1 of the MSA:

> "A. David has a 401(k) retirement plan with his employer, Retail First, Inc., valued at $90,000 as of March 1, 2022.  Documentation will be provided to verify the current amount.
>
>   B.  Lori shall be entitled to 50% of this 401(k) account as of the date of entry of the
>   Judgment for Dissolution of Marriage.
>
>   C.. A QDRO shall be drafted by Lori's attorney to effect the transfer of such funds and
>   David shall cooperate in the process."

¶ 5     On May 27, 2022, the circuit court conducted a prove-up hearing on the dissolution action. During the course of that hearing, the following testimony was elicited:

Lori was asked the following questions by her attorney and gave the following answers:

Lori's Attorney:  "Now, you are going to receive 50 percent of the value of David's 401(k)
                            Plan as of today's date; is that correct?"

Lori:                   "Yes."

Lori's Attorney:   " And you understand that's going to be without regard to any

withdrawals, transfers, or loans from David for that 401(k); is that

correct?"

Lori:                   "Yes."

Lori's Attorney:    "So if the 401(k) was worth $100 thousand and David borrowed 10

Thousand, you're still going to get $50 thousand; is that correct?"

Lori:                   "Correct."

David was asked the following questions by his attorney and gave the following answers:

David's Attorney:   "And did you hear the questions that were asked of Lori and did you

hear her answers to those questions?"

David:                "Yes."

David's Attorney:    "If you were asked the same questions or similar questions would

you give the same or similar answers?"

David:                "Yes."

¶ 6    On May 27, 2022, following the prove-up hearing, the circuit court entered a Judgment for Dissolution of Marriage which provided, in relevant part:

"All of the provisions of the Marital Settlement Agreement between the Petitioner and the Respondent dated May 1, 2022 are expressly ratified, approved and adopted as the orders of this Court to the same extent and with the same force and effect as if said provisions were in this paragraph set forth verbatim as the judgement of this Court.

¶ 7    On that same date, the circuit court entered a QDRO relating to David's 401(k) plan that was drafted by Lori's attorney and which, in the first paragraph of paragraph 7, stated as follows:

"7.  Amount of Alternate Payee's Benefit.  This order assigns to the Alternate Payee [Lori]

an amount equal to Fifty Percent (50%) of the Participant's Account Balance accumulated under the Plan as of May 27, 2022 (or the closest valuation date thereto) plus any interest and investment earnings or losses attributable thereon for periods subsequent to May 27, 2022, until the date of total distribution. Further, such Total Account Balance shall include all amounts maintained under all of the various accounts and/or subaccounts established on behalf of the Participant. The amount assigned to the Alternate Payee shall be 50% of the balance under the plan without deducting any loans, withdrawals and/or transfers from the Plan prior to May 27, 2022.

¶ 8    On October 17, 2022, David filed a Petition to Enforce Judgment for Dissolution of Marriage and Amend QDRO, arguing that it was the intent of the parties to allocate his 401(k) plan as set forth in the MSA which, according to David's petition, was 50% of the approximate $90,000 balance on the date of the judgment. On October 31, 2022, Lori filed a Motion to Enforce the Judgment & QDRO, arguing that the May 27, 2022, QDRO is consistent with the MSA and should not be amended.

¶ 9    On April 17, 2023, David's petition came on for hearing. On May 18, 2023, the circuit court entered an order memorializing its decision following the April 17, 2023, hearing. In that order, the court granted David's petition to enforce the judgment for dissolution of marriage and ordered that: "For purposes of division of *** [David's] Retail First 401(k) account, such account shall be valued as of May 27, 2022." Lori was ordered to "amend the QDRO to effectuate the division of the Retail First 401(k) account consistent" with the court's order.

¶ 10     On May 2, 2023, the circuit court entered a "First Amended Qualified Domestic Relations Order."   The order states that it was entered "as ordered by the Court on April 27, 2023."   In relevant part, the first paragraph in paragraph 7 of the first amended QDRO states:

> "7. Amount of Alternate Payee Benefit.  This order assigns to the Alternate Payee [Lori] an amount equal to Fifty Percent (50) of the Participant's Account Balance accumulated under the Plan as of May 27, 2022 (or the closest valuation date thereto) plus any interest and investment earnings or losses attributable thereon for periods subsequent to May 27, 2022, until the date of total distribution.  Further, such Total Account Balance shall include all of the various accounts and/or subaccounts established on behalf of the Participant."

Absent from paragraph 7 of the May 2, 2023, first amended QDRO was the following sentence that appeared in paragraph 7 of the May 27, 2022, QDRO: "The amount assigned to the Alternate Payee shall be 50% of the balance under the plan without deducting any loans, withdrawals and/or transfers from the Plan prior to May 27, 2022."

¶ 11     Lori filed a timely appeal from the circuit court's order of May 18, 2023, and the first amended QDRO entered on May 2, 2023.  She argues that the circuit court's interpretation of the allocation of David's 401(k) plan is contrary to the intention of the parties and that the court erred in amending the QDRO so as to eliminate the sentence in paragraph 7 which provided that: "The amount assigned to the Alternate Payee shall be 50% of the balance under the plan without deducting any loans, withdrawals and/or transfers from the Plan prior to May 27, 2022."   The parties correctly agree that our review is *de novo. In re Marriage of Kehoe and Farkas,* 2012 IL App (1st) 110644, ¶ 18.

¶ 12    It is undisputed that the parties entered into a written MSR which provided for a division of David's 401(k) plan.  The terms of the MSR are binding on the parties and the court unless the terms of the agreement are found to be unconscionable.  *In re Marriage of Kehoe and Farkas,* 2012 IL App (1st) 110644, ¶ 18.  The terms of a MSA are construed pursuant to the same rules governing the construction of contracts.  *Id.; In re Marriage of Druss,* 226 Ill.App.3d 470, 475 (1992).   A court's primary concern in construing a contract is to ascertain and give effect to the intent of the parties.  *Gallagher v. Lenart,* 226 Ill.2d 208, 232 (2007).  Where the language of an MSR is clear and unambiguous, courts must give effect to that language.  *In re Marriage of Schurtz,* 382 Ill.App.3d 1123, 1125 (2008).

¶ 13    In urging reversal of the trial court's May 18, 2023, order and the May 2, 2023, amended QDRO, Lori argues that "when looking at the facts, it is clear that David's 401(k) Plan should be allocated without regard to any prior loans, withdrawals and/or transfers."   In support of the argument, Lori references the provision in the MSA that her attorney was to draft the QDRO, the fact that the original QDRO was presented to the court on the date of the prove up, and the testimony of the parties at the prove up.  She concludes that "When looking at the settlement agreement, the qualified domestic relations order and the prove up testimony the intent of David and Lori is clear.  Lori was going to receive 50% of the value of the 401(k) Plan, as of the date of the entry of judgement, without deducting any loans, withdrawals and /or transfers of David prior to May 27, 2022.

¶ 14    David argues that the terms of the MSR are unambiguous, and therefore, the intent of the parties must be determined solely from the language of the instrument.  *In re Marriage of Mulry,* 314 Ill.App.3d 756, 759 (2000); *In re Marriage of Druss,* 226 Ill.App.3d at 475.  In support of the

argument, David also relies on the provision in section 5/502 of the Illinois Marriage and Dissolution of Marriage Act which provides in relevant part that:

"(b). The terms of the [marital settlement] agreement, except those providing for the support and parental responsibility allocation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable. The terms of the agreement incorporated into the judgment are binding if there is any conflict between the terms of the agreement and any testimony made at an uncontested prove-up hearing on the grounds or the substance of the agreement." 750 ILCS 5/502(b) (West 2022).

¶ 15 As noted earlier, the parties MSR provides that Lori shall be entitled to 50% of David's 401(k) plan "as of the date of the entry of the Judgment for Dissolution of Marriage." We find the provision unambiguous. The relevant sections of the MSA make no provision for calculation of the balance of the 401(k) on the date of the judgment without deducting any loans, withdrawals and/or transfers from the Plan prior to the date of judgment. The MSA was by specific reference incorporated into the Judgment for Dissolution of Marriage.

¶ 16 Where, as in this case, there is no ambiguity in the terms of an MSA, no parole or extrinsic evidence may be considered in construing the agreement. *In re Marriage of Druss,* 226 Ill.App.3d at 475. "Extrinsic evidence may be introduced only where instrument is incomplete or where the language used is ambiguous." *Id.* at 476. The question of whether an MSR is ambiguous is one which we address *de novo. In re Marriage of Dundas,* 355 Ill.App.3d 423, 426 (2005).

¶ 17 Having determined that the parties' MSA in unambiguous, we find, as did the circuit court, that construction of the terms of the MSA must be based solely upon the language of the agreement.

Based solely upon the language of the MSR, Lori was entitled to 50% of the balance of David's 401(k) plan on May 27, 2022, without modification or consideration for any loans, withdrawals and/or transfers from the plan prior to May 27, 2022.

¶ 18    For the reasons stated, we affirm the circuit court's order granting David's petition to enforce the judgment for dissolution of marriage and the first amended QDRO entered on May 2, 2023.

¶ 19    Affirmed.