*In re* MATTHEW SCHWASS *et al.*, (Matthew Schwass *et al.*, by their Guardian and Next Friend, Vicki Postillion, Plaintiff-Appellee, *v.* Nancy J. Schwass, Defendant-Appellant).

First District (3rd Division) No. 83—2700

Opinion filed July 25, 1984.—Rehearing denied August 29, 1984.

David J. Griffin, of Chicago, for appellant.

Rolewick & McKillip, of Wheaton (David F. Rolewick and Thomas G. Kenny, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Matthew Schwass and Pamela Schwass, by and through their guardian and next friend, Vicki Postillion, brought this action seeking the imposition of a constructive trust upon life insurance proceeds paid on the life of Charles Schwass to defendant Nancy Schwass. On cross motions for summary judgments, the trial court entered judgment in favor of plaintiffs. Defendant appeals.

Charles Schwass and Vicki Schwass, now Vicki Postillion, were married in 1962 and divorced in 1971. Two children, the plaintiffs, were born of this marriage: Matthew, born May 18, 1964, and Pamela, born March 30, 1966.

At the time of their divorce, Charles and Vicki entered a marital settlement agreement which was incorporated into their judgment for divorce. Paragraph 6 of that agreement provides in pertinent part:

"That the said minor children be named as co-equal irrevocable beneficiaries on all existing policies in existence as of September 1, 1971 on the life of Defendant and shall remain in force as such during the minority of said children. ***"

At the time of the divorce and until his death, Charles was employed by Commonwealth Edison Company and was covered under two group life insurance policies. At the time of the divorce, the amount of an insurance policy carried with Aetna Life Insurance Company was $24,000 and the amount of a policy carried with Travelers Insurance Company was $2,000. At the time of Charles' death, the Travelers coverage had increased to $5,000, while the Aetna policy had been replaced by a different Aetna group policy, the benefit of

which had increased to $63,000.

Charles and defendant were married in 1978. In 1979, they purchased a home in joint tenancy. Charles died on June 9, 1982. At that time Pamela was under the age of 18. After Charles died, Vicki learned that defendant was the named beneficiary on the life insurance policies and had received the insurance proceeds.

The trial court found that pursuant to the marital settlement agreement, both Matthew and Pamela were entitled to a constructive trust on the total amount of proceeds from both policies received by defendant. On appeal, defendant contends that her equitable right to the insurance proceeds is superior to any equitable right plaintiffs have; that Matthew does not have an equitable interest in the proceeds upon which a constructive trust may be imposed; and that Pamela's equitable interest in the proceeds is limited to the policies and amounts in force at the time of the judgment of divorce.

Defendant initially contends that she has a superior equitable right to the insurance proceeds. She points to the facts that she had no knowledge of the terms of the divorce, that when she and Charles purchased a home securing a substantial mortgage she did not obtain additional insurance coverage because Charles told her she was the beneficiary on his life insurance policies, that her income is insufficient to make the mortgage payments, and that she had to pay various bills as a result of his death.

■■ ■ When marital settlement agreements require an insured to maintain life insurance for the benefit of a particular beneficiary, that beneficiary has an enforceable equitable right to the proceeds of the insurance policies against any other named beneficiary except one with a superior equitable right. (*Appelman v. Appelman* (1980), 87 Ill. App. 3d 749, 410 N.E.2d 199; *Lincoln National Life Insurance Co. v. Watson* (1979), 71 Ill. App. 3d 900, 390 N.E.2d 506.) In *Brunnenmeyer v. Massachusetts Mutual Life Insurance Co.* (1978), 66 Ill. App. 3d 315, 384 N.E.2d 446, the insured's second wife, the named beneficiary on the life insurance policies, claimed a superior equitable right to the proceeds because the insured had been ill for a long time, had required costly care, and was destitute at the time of his death. The second wife also showed that she had limited financial resources, that there were outstanding bills, and that the children had other resources available to them. The *Brunnenmeyer* court found that these equitable considerations were insufficient to state a right to the proceeds which was superior to the rights of the children as set forth in the marital agreement. Similarly in the present case, the reasons stated by defendant, which are not as compelling as those rejected in

*Brunnenmeyer*, fail to state a superior equitable right to the insurance proceeds.

Defendant also contends that the trial court erred in finding that Matthew, who had attained his majority before Charles' death, has an equitable interest in the insurance proceeds.

Both parties agree that this issue turns on the interpretation of paragraph 6 of the marital settlement agreement which required decedent to designate his minor children as co-equal irrevocable beneficiaries of the policies. Defendant argues that the decedent was required to name Matthew as a beneficiary during his minority, while plaintiffs contend that decedent was obligated to designate both children as beneficiaries until Pamela reached her majority.

To determine the intent of the parties as expressed by the language of the contract, the contract should be considered as a whole, and none of the language should be rejected as surplusage. (*White v. White* (1978), 62 Ill. App. 3d 375, 378 N.E.2d 1255.) Here, the words "minor children" are used in paragraph 6 and throughout the divorce judgment and incorporated agreement. Since both children were minors at the time of the agreement, the word "minor" was not necessary to modify "children" if it was being used simply to identify the children of the parties. Thus, we agree with defendant that the use of the words "minor children" throughout the documents means that the related obligations need be performed only for the benefit of children who are in their minority.

A case cited by plaintiffs for a contrary result, *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12, does not support their position. In that case, a child support provision required the noncustodial father to pay a lump sum amount for the support of his minor children. Upon emancipation of each child the father unilaterally effected a *pro rata* reduction in the support payments. The court held that a lump sum amount for the support of more than one child is not subject to a parent's automatic unilateral *pro rata* reduction upon a child's emancipation. In so holding, the court did not find, as plaintiffs suggest, that the language "minor children" meant that the parent agreed to provide support for his subsequently emancipated children until the youngest reached majority. Rather, the court held that as the number of children to benefit under the award decreases, a parent cannot unilaterally reduce the amount of the award for the remaining children. The court still recognized that the father's obligation related only to children who were in their minority.

Nor is our holding inconsistent with other language in paragraph 6. The required designation of the minor children as irrevocable bene-

ficiaries simply means that the beneficiary designation could not be changed during the obligation period which, as stated above, continues for each beneficiary until he or she reaches majority. Although decedent was required to maintain the life insurance policies during the minority of the children, that requirement did not further obligate him to name Matthew as a beneficiary beyond his majority.

■ Since the obligation to name Matthew as a beneficiary terminated before Charles' death and since Matthew was not named as a beneficiary on the insurance policies, he did not have an equitable interest in the proceeds upon which a constructive trust could be imposed. Pamela, on the other hand, was under the age of majority at the time of Charles' death and has an equitable interest in the insurance proceeds. Pursuant to the insurance provision requirement that the minor children be named co-equal beneficiaries, which thereby granted each child during minority a one-half interest in the insurance proceeds, Pamela was entitled to a constructive trust on one-half of the insurance proceeds. See *Riser v. Riser* (1972), 7 Wash. App. 647, 501 P. 2d 1069.

Defendant contends, however, that if we find that Pamela has an equitable interest in the proceeds, her share in the proceeds should be limited to the amounts of the policies in effect at the time of the divorce judgment. The Aetna policy providing $63,000 in insurance benefits at the time of Charles' death was not in effect at the time of the divorce. Since the policies in effect at that time totalled $26,000, defendant argues that Pamela could not be entitled to more than $13,000.

The fact that the Aetna policy in effect at the time of the divorce was not in effect at the time of Charles' death is insignificant. In *Appelman v. Appelman* (1980), 87 Ill. App. 3d 749, 410 N.E.2d 199, the first wife of the decedent sought a constructive trust on proceeds of a policy different than the policies referred to in the parties' marital settlement agreement and which was acquired by the decedent 16 months after the divorce. Relying upon the holding in *Simonds v. Simonds* (1978), 45 N.Y.2d 233, 380 N.E.2d 189, this court observed that the mere substitution or replacement of policies does not defeat one's vested equitable interest and held that the first wife's complaint stated a cause of action. Similarly here, the decision by decedent's employer to replace one Aetna policy with a different Aetna policy did not affect decedent's life insurance obligation and does not defeat Pamela's equitable right to the proceeds of the insurance policy.

Although no Illinois court has specifically addressed the issue as to who is entitled to any increase in insurance benefits subsequent to

a marital settlement agreement and divorce, the *Appelman* decision lends some guidance. There, the court cited *McKissick v. McKissick* (1977), 93 Nev. 139, 560 P.2d 1366, as authority for the imposition of a constructive trust on proceeds of insurance policies acquired after the divorce and subsequently increased. In *McKissick,* the decedent agreed to maintain a specific life insurance policy that had an alleged value of $50,000 for the benefit of his first wife and children. The described policy did not exist, and the three existing policies totalling $40,000 named the decedent's second wife as beneficiary. Due to his accidental death, the insurance benefits of those policies tripled. To effectuate the intention of the husband in the agreement to provide life insurance for decedent's first wife and children, the court awarded the entire sum to the first wife and children. The court stated that the increase in benefits belonged to those persons for whose benefit the insurance was required to be carried. Although the situation in *McKissick* is not identical to the present case, the opinion is instructive. In *McKissick* the court focused on the intention of the parties at the time of the agreement to determine who was entitled to the increased insurance benefits. See also *Crozier v. Equitable Life Assurance Society* (1983), 33 Wash. App. 828, 658 P.2d 39; *White v. Michigan Life Insurance Co.* (1972), 43 Mich. App. 653, 204 N.W.2d 772 (record of divorce proceedings clearly established parties' intention to limit insurance benefits to the amount in effect at the time of the divorce).

In the present case, the language of the agreement provided that decedent's minor children were to be beneficiaries of the insurance policies, not of any specified dollar amount. The amounts of insurance coverage provided under the group policies increased as the employee's salary and length of employment increased. Since beneficiaries of a policy generally are entitled to the entire proceeds and nothing in the record suggests that the parties intended anything other than what was said in the agreement, that the minor children were to be the beneficiaries of the policies, we find that Pamela was entitled to her proportionate share of the entire proceeds distributed to defendant. (See *Crozier v. Equitable Life Assurance Society* (1983), 33 Wash. App. 828, 658 P.2d 39; *Newton v. Newton* (Colo. App. 1970), 472 P.2d 718; *Carter v. Carter* (1961), 202 Va. 892, 121 S.E.2d 482; but see *Washington v. Hicks* (1982), 109 Wis.2d 10, 325 N.W.2d 68.) Accordingly, Pamela is entitled to a constructive trust on the insurance proceeds received by defendant in the amount of $34,000.

For the reasons stated, the order of the circuit court of Cook County finding that Matthew was entitled to a constructive trust on

the proceeds of the policies is reversed. The order finding that Pamela was entitled to a constructive trust on the insurance proceeds received by defendant is affirmed, and the amount of the constructive trust to which Pamela is entitled is set at $34,000. The cause is remanded to the trial court to enter judgment accordingly.

Affirmed in part; reversed in part and remanded.

McGILLICUDDY and WHITE, JJ., concur.