NANCY A. PERKINS, f/k/a Nancy A. Nelson, for the benefit of Scott Nelson *et al.*, *et al.*, Plaintiffs-Appellants, v. BRENDA STUEMKE *et al.*, Defendants-Appellees.

Fourth District   No. 4—91—0348

Opinion filed January 16, 1992.

G. William Horsley, of Springfield, for appellants.

Patrick J. Sheehan, of Sheehan & Sheehan, Lawyers, P.C., of Springfield, for appellee Brenda Stuemke.

Donald M. Craven, of Donald M. Craven, P.C., of Springfield, for other appellees.

JUSTICE STEIGMANN delivered the opinion of the court:
This case presents the issue of whether a divorce decree, requiring the former husband to retain his former wife as the beneficiary of his life insurance policy for the benefit of their children, gives rise to

a constructive trust on the proceeds of a second, subsequently executed life insurance policy when the former husband allows the first insurance policy to lapse and names a different beneficiary to the second policy. We hold that it does and reverse the trial court's decision to the contrary.

## I. Facts

Terry and Nancy A. Nelson married in 1962. Three children were born to them: Scott in 1965, Nancy L. in 1968, and Teresa in 1970. In 1973, the Nelsons divorced. To obtain the divorce, Terry and Nancy retained the same attorney, who drafted a proposed divorce decree. After a hearing, the court adopted this decree, which contained the following provision:

> "[P]laintiff [Nancy L. Nelson] shall remain the beneficiary of defendant's [Terry Nelson's] John Hancock insurance policy in the amount of $10,000.00, for the benefit of the children."

The 1973 decree also provided that Terry must pay child support and maintain health insurance for the children. It also expressly barred both parties from ever claiming alimony.

In 1986, Terry Nelson allowed the John Hancock life insurance policy to lapse by failing to pay the premiums. In October 1988, Nancy (now Nancy Perkins) filed a motion for a rule to show cause against Terry for, among other things, his failure to pay child support from 1984 to 1988 and his failure to maintain the John Hancock life insurance policy. In November 1988, the court ordered Terry to pay the past-due child support, but made no order regarding the life insurance.

Meanwhile, in July 1988, the Village of Chatham hired Terry as an electric lineman. As a part of his compensation, Terry received a life insurance policy for $10,000 from the Dearborn Life Insurance Company, with a $10,000 accidental death bonus. Terry, who had remarried, named his second wife's child, Brenda Stuemke, the beneficiary of this policy. On February 28, 1989, Terry suffered an accidental death, and, on April 24, 1989, Brenda received $20,000 under the Dearborn life and accidental death policy.

On July 24, 1989, plaintiffs filed this action, claiming an equitable interest in the entire $20,000 life insurance proceeds based upon the 1973 divorce decree. Defendants claim to have spent all of the money by purchasing land, paying for the wedding of Brenda's sister, and paying off debts. After a hearing, the trial court found for the defendants without giving any explanation.

## II. A Constructive Trust Arising On Life Insurance Proceeds As A Result Of A Divorce Decree

■ In general, people may change the beneficiary on their life insurance policies on their own whim if they reserve the right to do so. (*Home Insurance Co. v. Hortega* (1990), 193 Ill. App. 3d 941, 943, 550 N.E.2d 688, 690; *Brunnenmeyer v. Massachusetts Mutual Life Insurance Co.* (1978), 66 Ill. App. 3d 315, 318, 384 N.E.2d 446, 448.) A beneficiary's right to the proceeds of a life insurance policy normally does not vest until the insured dies. (*Principal Mutual Life Insurance Co. v. Juntunen* (1989), 189 Ill. App. 3d 224, 227, 545 N.E.2d 224, 225.) However, when the beneficiary's rights vest before the insured changes the beneficiary, courts will impose a constructive trust on the proceeds to ensure the beneficiary's equitable, vested right to them. (See *IDS Life Insurance Co. v. Sellards* (1988), 173 Ill. App. 3d 174, 177-79, 527 N.E.2d 426, 428-29.) Imposing a constructive trust requires any other party who receives the insurance proceeds, but who has an inferior equitable right to them, to hold the proceeds solely for the vested beneficiary.

Many cases have dealt with situations similar to the present one, wherein a deceased party to a divorce permitted a life insurance policy to lapse by failing to pay the premiums, or changed the beneficiary to the policy, contrary to the requirements of a marital settlement agreement. (See *IDS Life Insurance Co.*, 173 Ill. App. 3d at 179-80, 527 N.E.2d at 429-30; *Koenings v. First National Bank & Trust Co.* (1986), 145 Ill. App. 3d 14, 17-18, 495 N.E.2d 671, 673-74; *In re Schwass* (1984), 126 Ill. App. 3d 512, 514-18, 467 N.E.2d 957, 959-61; *Appelman v. Appelman* (1980), 87 Ill. App. 3d 749, 753-56, 410 N.E.2d 199, 202-04; *Brunnenmeyer*, 66 Ill. App. 3d at 318-19, 384 N.E.2d at 448-49.) In such cases, the agreement requiring the insured to maintain a particular beneficiary on a policy gives that beneficiary vested rights in the proceeds of that policy. Accordingly, courts have imposed constructive trusts on the proceeds of the deceased's life insurance because the marital settlement agreement gives the former spouse or children named as beneficiaries in the binding agreement a superior equitable interest in the life insurance proceeds over later named beneficiaries. See *IDS Life Insurance Co.*, 173 Ill. App. 3d at 178-80, 527 N.E.2d at 429-30.

In *Appelman*, the court faced a situation very similar to the one before us. There, the decedent allowed the original policy to which the marital settlement agreement referred to lapse and obtained a new

life insurance policy 16 months after the divorce, naming a different beneficiary to the new policy. (*Appelman*, 87 Ill. App. 3d at 752, 410 N.E.2d at 201.) As in the present case, the second policy in *Appelman* arose merely as a fringe benefit of employment, and, as here, the second beneficiary in *Appelman* did not know of the obligation to maintain the former wife as beneficiary. The court held that none of these facts made the second beneficiary's equitable interest superior to the equitable interest of the former wife. *Appelman*, 87 Ill. App. 3d at 754, 410 N.E.2d at 203.

In *Schwass*, the policy to which the marital settlement agreement referred had lapsed and the decedent had established a new policy with a new beneficiary before the insured's death. *Schwass* expressly approved of the result in *Appelman*, and held that "[t]he fact that the [original] policy in effect at the time of the divorce was not in effect at the time of [the insured's] death is insignificant." (*Schwass*, 126 Ill. App. 3d at 516, 467 N.E.2d at 960.) It was equally insignificant that the dollar amount of life insurance proceeds differed between the two policies. *Schwass*, 126 Ill. App. 3d at 516, 467 N.E.2d at 960.

*Schwass* further held that the use of the term "minor children" as opposed to merely "children" limited the insured's obligation to maintain the children as beneficiaries. (*Schwass*, 126 Ill. App. 3d at 515, 467 N.E.2d at 960.) In *Schwass*, the divorce decree required that "the said *minor* children be named as co-equal irrevocable beneficiaries" of the former husband's life insurance policies. (Emphasis added.) (*Schwass*, 126 Ill. App. 3d at 513, 467 N.E.2d at 958.) The court refused to impose a constructive trust for the benefit of one child who had attained majority prior to the insured's death, but did impose a constructive trust for the benefit of the second child who had not attained majority prior to the insured's death. *Schwass*, 126 Ill. App. 3d at 516, 467 N.E.2d at 960.

Accordingly, following the holding in *Schwass*, if the clause at issue in the present case had read, "Terry shall maintain Nancy as beneficiary for the benefit of the *minor* children," or, "for the benefit of the children *during their minority*," then Terry's obligation to maintain life insurance would have ended when the children attained majority. However, because the decree referred to the children without mentioning their age, the decree required Terry to maintain the life insurance policy until, if ever, a court expressly modified the 1973 decree.

We agree with the results of the cases discussed earlier as they bear on the present case. First, the fact that plaintiffs request a constructive trust on a different life insurance policy than the policy

named in the divorce decree does not diminish their equitable right to the proceeds of the life insurance policy which listed Brenda as beneficiary. Second, it does not matter that Terry obtained the second policy as a fringe benefit of his employment. Third, it also does not matter that Brenda bears no blame for and had no knowledge that Terry allowed the first policy to lapse. Such a result does not punish Brenda for Terry's wrongdoing; it merely acknowledges that she holds an inferior equitable interest in the proceeds because of the divorce decree. Finally, the age of the Nelson children does not matter because the divorce decree did not create a limitation based on age when imposing the obligation to maintain Nancy as beneficiary for their benefit.

This case presents two factual twists not present in the previous cases. First, the obligation to maintain the former wife as beneficiary for the children arose as a part of a *divorce decree* and not a *marital settlement agreement*. Second, the clause in question states that the former husband shall maintain the former wife as beneficiary, but it does not specifically state that the former husband must maintain the policy. We hold that neither of these factual differences affects the analysis or the result.

With respect to the first difference, both *Brunnenmeyer* and *Appelman* stated the following:

> "A beneficiary may *** acquire a vested interest in the proceeds of [a] life insurance policy *if he gives valuable consideration in return for the promise of the insured* that the insured will name him beneficiary. [Citations.] The beneficiary named as a result of such an agreement has an equitable right which will be enforced as against any other named beneficiary except one who has a superior equitable right." (Emphasis added.) (*Brunnenmeyer*, 66 Ill. App. 3d at 318, 384 N.E.2d at 448, quoted in *Appelman*, 87 Ill. App. 3d at 753, 410 N.E.2d at 202.)

Defendants point out that both *Appelman* and *Brunnenmeyer*, as well as all other cases on point, involved a *marital settlement agreement* in which the beneficiary supplied consideration as a part of the marital settlement agreement for the promise of the insured to maintain the beneficiary on the policy. Accordingly, defendants argue that because this case involves a divorce decree and not an agreement, plaintiffs have not supplied the requisite consideration under an agreement to enforce the promise to maintain Nancy as beneficiary for the benefit of the parties' children.

Although plaintiffs point out that Nancy's giving up any right to alimony constitutes sufficient consideration, they need not do so. Providing consideration as a part of an agreement constitutes a *suffi-*

*cient* way to vest the beneficiary's rights, but it is not a *necessary condition* to vesting those rights. Consideration is only necessary when *private* parties legally bind each other by contract. When a *court* imposes an obligation upon a party, no such contractual formalities are necessary or even helpful to make the court's decree binding; the decree binds the parties to its terms by virtue of the court's authority. Accordingly, the fact that the obligation came out of a divorce decree and not a marital settlement agreement does not affect the result. The divorce decree created enforceable rights between Terry and Nancy that are just as enforceable as the rights that arise out of marital settlement agreements.

■ With respect to the second difference this case presents, defendants argue that "the obligation of paying premiums is distinct from the obligation to retain a beneficiary designation." As such, defendants argue that, although Terry could not change the beneficiary, he could terminate the policy, obtain a new policy, and name a new beneficiary. Of course, the decree could have been more clearly drafted to expressly set forth Terry's obligation to maintain the policy, as well as his obligation to maintain Nancy as the beneficiary. (We note that the clauses at issue in every other case on point do state both obligations clearly, either by expressly stating that the former husband shall maintain the life insurance (*Koenings*, 145 Ill. App. 3d at 15-16, 495 N.E.2d at 672; *Appelman*, 87 Ill. App. 3d at 751-52, 410 N.E.2d at 201; *Brunnenmeyer*, 66 Ill. App. 3d at 316-17, 384 N.E.2d at 653), or by naming the beneficiaries as "irrevocable beneficiaries" (*IDS Life Insurance Co.*, 173 Ill. App. 3d at 176, 527 N.E.2d at 427; *Schwass*, 126 Ill. App. 3d at 513, 467 N.E.2d at 958)). However, the obligation to maintain a person as a beneficiary clearly entails the obligation to maintain the policy. Any other construction would render illusory the obligation to maintain a beneficiary. We conclude that the 1973 divorce decree obliged Terry to maintain life insurance for his children's benefit until and unless a court modified the decree.

### III. Equitable Defenses

Defendants also argue that we should not impose an equitable trust on the proceeds because (1) Nancy failed to pursue her claim against Terry in 1988 to maintain her as the beneficiary of the life insurance proceeds, and (2) the doctrine of *laches* prohibits Nancy from bringing this suit five months after Terry's death and three months after Brenda received the proceeds of the life insurance policy.

■ With respect to the first argument, the court's failure to address some of the relief Nancy requested in her 1988 motion does not

deprive her of the right to that relief. We note that the court never expressly denied her motion regarding the life insurance; it simply ruled on the issue of child support and continued the matter for further proceedings. Four months later, Terry died. The court's failure in the 1988 proceedings to order Terry to maintain life insurance did not lift or modify Terry's obligation, imposed by the divorce decree, to maintain life insurance. (See *Oscar George Electric Co. v. Metropolitan Fair & Exposition Authority* (1982), 104 Ill. App. 3d 957, 962, 433 N.E.2d 958, 962 (trial court's failure to rule on motion is not equivalent to denying it); see also *Veterans Travel Club of Western Illinois University v. Illinois Commerce Comm'n* (1973), 15 Ill. App. 3d 116, 119, 303 N.E.2d 142, 145.) The court's inaction in this case does not amount to an affirmative result for *either* party. Not surprisingly, the primary concern of Nancy's 1988 motion was to obtain the unpaid child support. Having obtained that relief from the court, the fact that Nancy did not pursue the other relief requested with the same vigor does not bar her claim.

■ Defendants also argue that Nancy is guilty of *laches* because she did not aggressively bring this action either in February 1989, when Terry died, or in April 1989, when Brenda received the proceeds, but instead waited until July 1989. We disagree. The delay between the insured's death and the suit in *Brunnenmeyer* was two months (March 29 to June 2, 1977), and the delay in *Appelman* was three months (August 21 to November 22, 1978). No other cases discuss the time interval between the insured's death and the date of the suit. However, we find nothing unreasonable about the five-month delay between Terry's death and Nancy's filing the present suit.

IV. The Amount Of The Constructive Trust

■ As a final matter, we note that plaintiffs have requested that the court impose a constructive trust on the full $20,000, representing the proceeds from both the $10,000 life insurance policy and the additional $10,000 accidental death provision. However, pursuant to the 1973 divorce decree, plaintiffs hold an equitable interest to $10,000, not the full $20,000 Brenda received.

The *Schwass* court held that an increase in benefits that occurs after the divorce belonged to the original beneficiary named in the marital settlement agreement because the marital settlement agreement referred to life insurance generally and did not mention any specific dollar amount. (*Schwass*, 126 Ill. App. 3d at 517, 467 N.E.2d at 961.) However, in the present case, the clause at issue specifically refers to only $10,000 of life insurance. In addition, the original John Hancock

life insurance policy did not contain an accidental death provision. The $10,000 accidental death benefit provided $10,000 of the $20,000 that Brenda received. As such, Nancy holds an equitable interest in only $10,000 of the $20,000 that Brenda received under the Dearborn life insurance policy, and she should receive a constructive trust for only that amount.

## V. CONCLUSION

For the reasons stated, we reverse the trial court and remand for further proceedings consistent with this opinion.

Reversed and remanded.

GREEN, P.J., and LUND, J., concur.