# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**In re Estate of Mosquera, 2013 IL App (1st) 120130**

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF RAUL N. MOSQUERA, Deceased (Alejandro R. Mosquera and Fernando R. Mosquera, Claimants-Appellants, v. Katie Mosquera, Respondent-Appellee). |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-0130 |
| Filed | May 10, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings arising from claims made against decedent's estate by two adult children of decedent's first marriage and the petition of decedent's disabled child seeking a dependent child's award, the trial court properly dismissed the children's claim pursuant to the consent judgment in their parents' divorce judgment awarding them the life insurance benefits decedent had through his employment, since the judgment only applied to minor children and the policy was not provided through decedent's employment; however, the trial court erred in dismissing the disabled child's petition on the ground that he became disabled after he had reached adulthood, because the only relevant factor was whether the child was unable to maintain himself and would likely become a public charge. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-P-248; the Hon. James G. Riley, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

| Counsel on Appeal | David T. Arena, Patrick D. Owens, and Adam J. Poteracki, all of Di Monte & Lizak, LLC, of Park Ridge, for appellants. |
| | |
| | Barry A. Feinberg, Daniel J. Fumagalli, and David J. Feinberg, all of Chuhak & Tecson, P.C., of Chicago, for appellee. |
| | |
| Panel | JUSTICE PALMER delivered the judgment of the court, with opinion. Presiding Justice McBride and Justice Taylor concurred in the judgment and opinion. |

## OPINION

¶ 1   Claimants, Alejandro and Fernando Mosquera, are the children of the marriage of Marta Markman and the decedent, Raul Mosquera. Alejandro was born on November 27, 1979, and Fernando was born in June 1981. The decedent's marriage to Markman ended in a divorce pursuant to a consent judgment entered in Howard County, Maryland, on June 15, 1993. At the time the consent judgment was entered, Alejandro was 13 years old and Fernando was 12 years old.

¶ 2   The decedent was later remarried to the respondent in this case, Katie Mosquera. That marriage produced one child, Elizabeth Mosquera. The decedent died intestate on January 10, 2011. Respondent filed a petition for letters of administration on February 1, 2011. Respondent submitted an affidavit of heirship along with the petition, in which she attested, among other things, that Fernando was disabled. On February 1, 2011, respondent was appointed the supervised administrator of the decedent's estate. On that same date, the circuit court entered an order declaring heirship, in which the court found that Fernando was an adult disabled heir of the decedent.

¶ 3   On June 9, 2011, respondent filed a petition for spousal award seeking $132,381, pursuant to section 15-1 of the Probate Act of 1975 (the Act) (755 ILCS 5/15-1 (West 2010)). Respondent was subsequently awarded three separate partial spouse's awards which totaled $80,000.

¶ 4   On July 11, 2011, Fernando filed a petition for child's award (the Petition), seeking an award of $203,709.33 pursuant to section 15-2(a) of the Act (755 ILCS 5/15-2(a) (West 2010)).[1] That section, entitled "Child's award," provides:

"(a) If a minor or adult dependent child of the decedent does not reside with the surviving spouse of the decedent at the time of decedent's death, there shall be allowed

---

[1] In a subsequent pleading, Fernando amended his requested award to an amount between $203,709.33 and $460,335.49.

to that child, exempt from the enforcement of a judgment, garnishment or attachment in the possession of the representative, a sum of money that the court deems reasonable for the proper support of the child for the period of 9 months after the death of the decedent, in a manner suited to the condition in life of the minor child and to the condition of the estate. The award may in no case be less than $10,000 and shall be paid for the benefit of the child to such person as the court directs." 755 ILCS 5/15-2(a) (West 2010).

Fernando claimed that he was an "adult dependent child" within the meaning of the Act because he was unable to maintain himself and was a public charge. Fernando specifically claimed that he was afflicted with Crohn's disease and schizoaffective disorder and that he had resided in the inpatient psychiatry service at Johns Hopkins hospital since August 2010. The Social Security Administration (SSA) found Fernando to be disabled as of May 12, 2002, and began paying disability benefits to him in November of 2003. Fernando asserted that he incurred numerous hospital expenses as a result of his conditions and that the award he sought represented the expenses he would incur during the nine months after the decedent's death.

¶ 5        Respondent filed a response to the Petition on August 12, 2011. Respondent argued that Fernando was competent when he reached 18 years of age and that it was not until he was an adult that the SSA declared him disabled. Because Fernando's disability did not occur until he was an adult, respondent argued, Fernando was not an adult dependent child within the meaning of the Act. Respondent also argued that the equities favored not awarding Fernando the adult dependent child award. Respondent claimed that the decedent left behind a surviving spouse and a child from that marriage who needed continued financial support because the decedent was the primary wage earner in the family. However, the estate could not continue to support respondent and her child if the court awarded Fernando the award he sought. Fernando replied by arguing that he need not have become disabled when he was a minor in order to qualify for the adult dependent child award and that, under the Act, the spouse's award and the child's award were to be treated equally.

¶ 6        Fernando and Alejandro filed a claim (the Claim) against the decedent's estate on July 12, 2011. They asserted that the consent judgment entered in their parent's divorce obligated the decedent to "irrevocably designate the minor children as the beneficiaries of at least 50% of all life insurance benefits available to him through his employment." Claimants alleged that on December 1, 1998, on information and belief, the decedent purchased a $500,000 AXA Equitable life insurance policy (the Policy) through his employer, R. N. Mosquera, M.D., S.C. The decedent paid premiums for the policy out of his employer's checking account, and the claimants attached two checks to their claim evidencing payments on May 21 and November 17, 2008. The claimants argued that the decedent violated the consent judgment by naming respondent as the beneficiary of the policy and that on February 17, 2011, AXA Equitable paid a death benefit to respondent in the amount of $553,831.26. Claimants asked the court to award them $276,915.63, which represented 50% of the death benefits paid under the Policy.

¶ 7        Respondent filed a motion to dismiss the Claim pursuant to section 2-619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619(a)(9) (West 2010)). Respondent claimed that the consent judgment only obligated the decedent to maintain the claimants as

irrevocable beneficiaries while they were minors and that, because the claimants were adults at the time of the decedent's death, they were not required to be designated as irrevocable beneficiaries at that time. Respondent also claimed that the decedent obtained the life insurance policy individually, not through his employment, and therefore claimants were not entitled to proceeds from that policy.

¶ 8    On December 15, 2011, the circuit court heard arguments on the Petition and the Claim. The court dismissed the Petition on the ground that the Act required Fernando to have become a dependent disabled child when he was a minor. The court dismissed the Claim on two grounds. First, the court found that the provision in the consent judgment only applied when Fernando and Alejandro were minors and that, because they were adults when the decedent passed away, Fernando and Alejandro were not entitled to be named beneficiaries of the Policy. Second, the court found that the Policy was not available through the decedent's employment but, rather, was purchased by the decedent personally. The court therefore ordered that the "619 is sustained on both counts."[2] This appeal followed.

¶ 9    On appeal, claimants challenge the circuit court's dismissal of the Claim and Fernando challenges the dismissal of the Petition. Both the Claim and the Petition were dismissed pursuant to section 2-619 of the Code.[3] A section 2-619 motion admits the legal sufficiency of the claim, but raises defects, defenses, or other affirmative matter apparent on the face of the claim or established by external submissions which defeat the action. *AIDA v. Time Warner Entertainment Co.*, 332 Ill. App. 3d 154, 158 (2002). When ruling on a section 2-619 argument, a court must accept as true all well-pled facts in the claim and all inferences that reasonably can be drawn in the claimant's favor. *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 206 (2000). Our review of the disposition of a section 2-619 motion is *de novo*. *Chicago Teachers Union*, 189 Ill. 2d at 206.

¶ 10   We first consider the dismissal of Fernando's Petition. Respondent's position is that Fernando is not an adult dependent child because he did not become disabled until he was an adult. Respondent claims that an adult dependent child under the Act is "one who is

_____

[2]The court and counsel for respondent referred to a section 2-619 motion to dismiss the Petition. However, the record contains no such motion, but instead a response to the Petition filed by respondent. That response did not ask the court to dismiss the Petition pursuant to section 2-619 but, rather, asked the court to deny the Petition. The only section 2-619 motion to dismiss contained in the record is respondent's motion to dismiss the Claim.

[3]As noted, the circuit court dismissed the Claim and the Petition pursuant to section 2-619 of the Code although there is no section 2-619 motion to dismiss the Petition in the record. Neither party addresses this issue in their briefs to this court. The only implicit acknowledgment of the issue is found in the fact that respondent argues that the court denied the Petition on the pleadings and cites the standard of review for judgment on the pleadings. Claimants, on the other hand, cite the standard of review for dismissal pursuant to section 2-619 of the Code. Because there was no objection by any party when the circuit court reviewed and dismissed the Claim and the Petition pursuant to section 2-619 of the Code, we will treat both as if they were dismissed under section 2-619. We note that we would reach the same result in this case even if we applied the standard of review for judgment on the pleadings to the denial of the Petition.

deemed disabled as a child with such disability continuing through adulthood." Respondent also claims that because the decedent was not providing financial support to Fernando at the time of his death, Fernando was not "dependent" upon the decedent. Fernando, on the other hand, claims that he need not have become disabled as a minor or to have been receiving financial support from the decedent at the time of his death in order to qualify for the dependent child award.

¶ 11 Our analysis is guided by well-established principles of statutory interpretation. The primary rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. *In re Marriage of Rogers*, 213 Ill. 2d 129, 136 (2004). The best evidence of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). Interpretation of a statute is a question of law that is reviewed *de novo*. *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590, 595 (2005).

¶ 12 Section 15-2(a) of the Act states in relevant part:

"(a) If a minor or adult dependent child of the decedent does not reside with the surviving spouse of the decedent at the time of decedent's death, there shall be allowed to that child, exempt from the enforcement of a judgment, garnishment or attachment in the possession of the representative, a sum of money that the court deems reasonable for the proper support of the child for the period of 9 months after the death of the decedent, in a manner suited to the condition in life of the minor child and to the condition of the estate. The award may in no case be less than $10,000 and shall be paid for the benefit of the child to such person as the court directs." 755 ILCS 5/15-2(a) (West 2010).

"[T]he legislature intended that the child's award be liberally given, so that the minor children and the disabled adult children of a decedent are supported for the nine-month statutory period." *In re Estate of Degner*, 164 Ill. App. 3d 959, 962 (1987).

¶ 13 A plain reading of the statute indicates that to qualify for the award, Fernando must be an adult dependent child of the decedent who did not reside with the decedent's surviving spouse at the time of the decedent's death. Most of these criteria are not in dispute. It is uncontested that Fernando is an adult child of the decedent and that he did not reside with respondent at the time of the decedent's death.

¶ 14 The issue in this case is whether Fernando is a "dependent" under the Act and whether the Act requires that Fernando have been deemed disabled as a child with such disability continuing into adulthood. The Act defines "dependent" as "a person who is unable to maintain himself and is likely to become a public charge." There is no dispute that Fernando was found to be disabled by the SSA on May 12, 2002, or that at the time the Petition was filed, Fernando was unable to maintain himself and was already a public charge due to his disability.

¶ 15 Contrary to respondent's contention, the Act does not condition receipt of the award on the adult dependent child being financially dependent on the decedent at the time of death. *Degner*, 164 Ill. App. 3d at 961-62. In *Degner*, the adult disabled child was 41 years old at the time of her father's death. She had been thrown out of her parents home at the age of 20 and received childhood disability benefits from the SSA, which determined that she was

disabled prior to the age of 18. *Degner*, 164 Ill. App. 3d at 960. After the decedent passed away, the adult child applied for and received the statutory child award. *Degner*, 164 Ill. App. 3d at 960. The executors of the decedent's estate challenged the award on the basis that the adult child was not "dependent" on the decedent because the decedent was not providing financial support to that child at the time of his death. *Degner*, 164 Ill. App. 3d at 961.

¶ 16 The court disagreed, finding that whether the decedent actually provided financial support to his adult disabled child was not relevant to the question of whether the adult child was "dependent" within the meaning of the Act. *Degner*, 164 Ill. App. 3d at 961-62. The court noted that the Act contained no such requirement and that the term "dependent" was not defined by the Act as one who is actually receiving financial support. *Degner*, 164 Ill. App. 3d at 962. The only relevant question was whether the adult child was unable to maintain herself and was likely to become a public charge, and the adult child's lack of financial dependence on her father was "meaningless." *Degner*, 164 Ill. App. 3d at 962. Reasoning that the award was to be liberally given so that the disabled adult children of a decedent were supported for the nine-month statutory period, the court declined to adopt the executioners' interpretation of the Act and to thereby "artificially limit the scope of the child award provision." *Degner*, 164 Ill. App. 3d at 962. The court concluded that the adult child was "obviously" unable to maintain herself and was already a public charge and therefore affirmed the award to the adult dependent child. *Degner*, 164 Ill. App. 3d at 963.

¶ 17 We reach the same result in this case. For purposes of deciding whether Fernando is "dependent" within the meaning of the Act, the only relevant determination is whether Fernando is unable to maintain himself and is likely to become a public charge. Whether Fernando was financially dependent on the decedent at the time of his death is of no consequence to this determination. There is no such requirement in the Act and we decline to adopt respondent's interpretation of the statute and to thereby narrow the scope of the adult dependent child award. See *Degner*, 164 Ill. App. 3d at 962-63.

¶ 18 The reasoning expressed in *Degner* also applies to respondent's contention that Fernando does not qualify for the award because he was not deemed disabled as a minor with such disability continuing into adulthood. The Act does not require Fernando to have been disabled since he was a minor in order to qualify for the award. Had the legislature intended to impose such a requirement, it could have included it in section 15-2 of the Act or incorporated that requirement into the definition of a "dependent." The legislature did not do so and we will not narrow the statute's reach by reading into it exceptions or limitations. See *Degner*, 164 Ill. App. 3d at 963. Respondent attempts to distinguish *Degner* on the basis that the adult child in that case had been disabled since she was a minor, whereas Fernando was 20 years old when the SSA declared him disabled. However, whether the child had to be disabled as a minor was not at issue in *Degner* and there is nothing to indicate that when the child became disabled had any bearing on the court's decision in that case.

¶ 19 For these reasons, we reverse the circuit court's dismissal of Fernando's Petition. Because the court dismissed the Petition, it did not have occasion to consider the amount to be awarded to Fernando. Accordingly, we remand this case to the circuit court for an evidentiary hearing to determine "a sum of money that the court deems reasonable for the proper support of the child for the period of 9 months after the death of the decedent, in a

-6-

manner suited to the condition in life of the minor child and to the condition of the estate." See 755 ILCS 5/15-2(a) (West 2010).

¶ 20    We next consider the circuit court's dismissal of the Claim. Claimants first argue that the court erred in granting respondent's motion to dismiss the Claim because the motion was not supported by an affidavit that complies with Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013).

¶ 21    Section 2-619(a)(9) states, in relevant part:

"Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked *the motion shall be supported by affidavit*:

* * *

(9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (Emphasis added.) 735 ILCS 5/2-619(a)(9) (West 2010).

¶ 22    Supreme Court Rule 191 states:

"Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure, affidavits submitted in connection with a motion for involuntary dismissal under section 2-619 of the Code of Civil Procedure, and affidavits submitted in connection with a motion to contest jurisdiction over the person, as provided by section 2-301 of the Code of Civil Procedure, shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191 (eff. Jan. 4, 2013).

¶ 23    Claimants argue that respondent's motion to dismiss did not assert any facial defects to the Claim but, instead, asserted additional matter that defeated the Claim. As such, claimants assert that respondent was required to support her motion to dismiss with an affidavit. Claimants note that respondent appended an "affidavit" to her motion to dismiss but claim that it does not meet the standards of a legally sufficient affidavit because it is not notarized or certified. See *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 494 (2002) ("[A]n affidavit must be sworn to, and statements in a writing not sworn to before an authorized person cannot be considered affidavits."). We disagree.

¶ 24    Respondent filed a reply in support of her motion to dismiss. Attached to that reply was a "Verification" pursuant to section 1-109 of the Code in which respondent "certified that the statements and all exhibits thereto set forth in the Section 2-619 Motion to Dismiss Plaintiff's Claim are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true." Section 1-109 of the Code specifically provides that, "[u]nless otherwise expressly provided by rule of the Supreme Court, whenever in this Code any complaint [or] petition *** is required or permitted to be verified, or made, sworn to or

verified under oath, such requirement or permission is hereby defined to include a certification of such pleading." 735 ILCS 5/1-109 (West 2010). Section 1-109 also states that, "[a]ny pleading, affidavit or other document certified in accordance with this Section may be used in the same manner and with the same force and effect as though subscribed and sworn to under oath." 735 ILCS 5/1-109 (West 2010). A party's verification of a motion to dismiss under section 2-619 has been held to be an acceptable substitute for an affidavit under Supreme Court Rule 191. See *Griffin v. Universal Casualty Co.*, 274 Ill. App. 3d 1056, 1063 (1995); *In re Marriage of Manhoff*, 377 Ill. App. 3d 671, 676 (2007). In this case, we find that respondent's verification was the equivalent of an affidavit for purposes of Supreme Court Rule 191. Accordingly, respondent's motion to dismiss was not defective because it was verified rather than supported by an affidavit.

¶ 25   We now consider the merits of the dismissal of the Claim. The relevant paragraph of the consent judgment provides:

"ORDERED, that the Defendant Raul Norberto Mosquera shall irrevocably designate the minor children Alejandro Raul Mosquera and Fernando Raul Mosquera as the beneficiaries of at least 50% of all life insurance benefits available to him through his employment and he shall provide the Plaintiff Marta Isabel Markman-Mosquera with proof of said beneficiary designation within sixty days."

¶ 26   Claimants first assert that the consent judgment required the decedent to irrevocably designate them as beneficiaries of the Policy and that it is irrelevant that they had reached majority age at the time of the decedent's death. On the other hand, respondent claims that by using the terms "minor children," the judgment limited the decedent's obligation to maintain the claimants as irrevocable beneficiaries to the period when they were minors.

¶ 27   A divorce decree is interpreted like a contract, and our primary task is to give effect to the intent of the trial court and the parties. *IDS Life Insurance Co. v. Sellards*, 173 Ill. App. 3d 174, 179 (1988). Intent is ascertained from the decree itself unless the language of the decree is ambiguous. *IDS*, 173 Ill. App. 3d at 176. The decree should be interpreted as a whole, and none of the language should be rejected as surplusage. *In re Schwass*, 126 Ill. App. 3d 512, 515 (1984).

¶ 28   Courts have generally held that when the words "minor children" are used in circumstances similar to those in this case, the related obligation ends when the children reach majority. For example, in *Schwass*, 126 Ill. App. 3d at 513, the marital settlement provided:

" 'That the said minor children be named as co-equal irrevocable beneficiaries on all existing policies in existence as of September 1, 1971 on the life of Defendant and shall remain in force as such during the minority of said children.' "

Noting that the words "minor children" were used throughout the settlement, the court reasoned:

"Since both children were minors at the time of the agreement, the word 'minor' was not necessary to modify 'children' if it was being used simply to identify the children of the parties. Thus, we agree with defendant that the use of the words 'minor children' throughout the documents means that the related obligations need be performed only for

-8-

the benefit of children who are in their minority." *Schwass*, 126 Ill. App. 3d at 515.

The court noted that its holding was consistent with the use of the phrase "irrevocable beneficiaries" in the settlement, which it interpreted to "simply mean[ ] that the beneficiary designation could not be changed during the obligation period" which continued until each beneficiary reached majority. *Schwass*, 126 Ill. App. 3d at 515-16. The court therefore refused to impose a constructive trust for the benefit of the child who had attained majority before the decedent passed away.

¶ 29    In *IDS*, 173 Ill. App. 3d at 176, the relevant provision stated:

" 'Defendant shall keep in full force and effect the life insurance he presently has, with the two children as irrevocable beneficiaries thereunder, and further, he shall be responsible for all items of extraordinary and unusual medical, dental, hospital and orthodontic expenses incurred on behalf of the minor children.' "

The court interpreted the "minor children" language to limit the obligation until the children reached majority, stating that the agreement required the decedent to provide for the listed extraordinary expenses of the children during their minority. *IDS*, 173 Ill. App. 3d at 179. The life insurance portion, which referred only to "children" without the modifier "minor," was interpreted to mean that the children had to be named as beneficiaries and that under no circumstances could the decedent revoke their right to the proceeds upon his death. *IDS*, 173 Ill. App. 3d at 179. In other words, the obligation to maintain the children as beneficiaries did not end when they attained majority because "minor" was not used to modify "children." In fact, the court noted that had the parties intended to give the decedent the right to change the beneficiary after the children reached majority, "they could have done so with a specific statement to that effect." *IDS*, 173 Ill. App. 3d at 179.

¶ 30    In *Perkins v. Stuemke*, 223 Ill. App. 3d 839, 841 (1992), the relevant provision of the divorce decree stated:

" '[P]laintiff [Nancy L. Nelson] shall remain the beneficiary of defendant's [Terry Nelson's] John Hancock insurance policy in the amount of $10,000.00, for the benefit of the children.' "

Again, because the decree referred to "children" without any modifier such as "minor" or the children's age, the court held that the plaintiff was required to maintain the life insurance policy until, if ever, a court modified the decree. *Perkins*, 223 Ill. App. 3d at 843. The court reviewed the decision in *Schwass* in coming to that holding and reasoned:

"[F]ollowing the holding in *Schwass*, if the clause at issue in the present case had read, 'Terry shall maintain Nancy as beneficiary for the benefit of the minor children,' or, 'for the benefit of the children during their minority,' then Terry's obligation to maintain life insurance would have ended when the children attained majority." (Emphases omitted.) *Perkins*, 223 Ill. App. 3d at 843.

¶ 31    Applying these principles to the present case, we conclude that the claimants are not entitled to proceeds from the Policy. It is true that the consent judgment does not contain a statement like the one found in *Schwass* that the designation of the children as irrevocable beneficiaries " 'shall remain in force as such during the minority of said children.' " See *Schwass*, 126 Ill. App. 3d at 513. Nevertheless, the consent judgment limits the requirement

-9-

that the claimants be designated as irrevocable beneficiaries to the period when they are "minor children." The terms "minor children" are used throughout the consent judgment, even though both claimants were minors at the time the judgment was entered. The word "minor" would have been unnecessary and surplusage had the parties intended it simply to identify their children. Therefore, by modifying "children" with "minor," the parties expressed an intent that the decedent be obligated to designate and maintain the claimants as irrevocable beneficiaries only when they were minors and that his obligation would end when the children attained majority. See *Schwass*, 126 Ill. App. 3d at 515; *IDS*, 173 Ill. App. 3d at 179; *Perkins*, 223 Ill. App. 3d at 843. The requirement that the minor children be named as "irrevocable" beneficiaries does not change this result. In context of the consent judgment, this requirement only means that the beneficiary designations could not be changed while the children were minors but that it could be changed when they reached majority. See *Schwass*, 126 Ill. App. 3d at 516.

¶ 32    It is undisputed that both claimants had already reached majority when the decedent passed away. Therefore, the decedent was under no obligation at the time of his death to have the claimants designated as irrevocable beneficiaries of any life insurance policy that the decedent obtained through his employment. Accordingly, the claimants are not entitled to a portion of the proceeds of the Policy.

¶ 33    Claimants also argue that the circuit court erred in finding that the Policy was not "available through the decedent's employment" where the decedent was self-employed and the sole shareholder of his medical practice and where that practice made certain premium payments to the insurer. On the other hand, respondent argues that the Policy was not available through the decedent's employment because it was purchased by the decedent before his medical practice was formed.

¶ 34    Respondent attached a copy of the Policy to her motion to dismiss. This showed that the Policy was purchased in December 1998 and that the decedent purchased and owned the policy in his individual capacity. Respondent also attached the articles of incorporation for the decedent's medical practice, which were filed in November 1999. Together, these documents established that the Policy was purchased almost one year before the decedent's medical practice was formed. Therefore, the Policy could not have been available to the decedent through his employment. Moreover, the record shows that almost all of the Policy payments were made out of the joint funds of the decedent and respondent. Claimants cite no authority for the proposition that two premium payments made by the decedent's medical practice converts the nature of the Policy from one that the decedent obtained individually into one that was available through his employment.

¶ 35    We are not persuaded by claimants request that, as the court did in *Schwass*, we should "look beyond the formalities of the Consent Judgment" and find that they are entitled to proceeds from the Policy because the decedent was the sole shareholder of his medical practice. In *Schwass*, 126 Ill. App. 3d at 513, as noted, the marital settlement required the minor children to be named as irrevocable beneficiaries of all life insurance policies in existence on the date of the divorce and required that designation to continue during the minority of those children. One of those children was a minor at the time of the decedent's death and the court found that the child had an equitable interest in the insurance proceeds.

-10-

*Schwass*, 126 Ill. App. 3d at 513. At the time of the divorce until his death, the decedent was covered by a life insurance policy through his employment. At some point between when the decedent was divorced and when he passed away, his employer replaced the life insurance policy with a different policy though the same company that carried a higher benefit. *Schwass*, 126 Ill. App. 3d at 513-14. The court rejected the argument that the adult child's share of the proceeds should be limited to the amount of the policy in effect at the time of the divorce, finding it "insignificant" that the policy in effect at the time of the divorce was not in effect at the time of the decedent's death. *Schwass*, 126 Ill. App. 3d at 516. Relying upon a line of cases holding that "the mere substitution or replacement of policies does not defeat one's vested equitable interest," the court found that the decision by the decedent's employer to replace one policy with a different policy did not affect the decedent's life insurance obligation and did not defeat the adult child's equitable right to the proceeds of the insurance policy. *Schwass*, 126 Ill. App. 3d at 516.

¶ 36 The circumstances in *Schwass* are distinguishable from those in the present case. This is not a case involving a claimant who had an equitable interest in a life insurance policy that was later substituted for a different policy. Here, unlike the adult child in *Schwass*, neither claimant had an equitable interest in the Policy because neither was a minor at the time of the decedent's death and because the Policy was not available through the decedent's employment.

¶ 37 We therefore affirm the dismissal of the Claim because the Policy only required the claimants to be named as beneficiaries when they were minors and because the Policy was not available through the decedent's employment.

¶ 38 For the foregoing reasons, we affirm the circuit court's judgment in part and reverse it in part, and we remand this cause for further proceedings.

¶ 39 Affirmed in part and reversed in part; cause remanded.